UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:21-cv-590

| | |
|---|---|
| MATTHEW BRUEHL, M.D., | |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**(Class Action)** |
| DUKE UNIVERSITY, DUKE UNIVERSITY SCHOOL OF MEDICINE, DUKE UNIVERSITY MEDICAL CENTER, AND PRIVATE DIAGNOSTIC CLINIC, PLLC, | |
| Defendants. | |

NOW COMES PLAINTIFF, and on behalf of himself and other similarly situated individuals either currently or previously employed by the Defendants, complains of the Defendants, and alleges:

## PARTIES

1.     Defendant Duke University (DU) is a North Carolina non-profit educational institution with its principal place of business in Durham, Durham County North Carolina, and provides its students, including students of its school of medicine and other allied fields, with academic services including clinical training delivered by physicians providing academic and teaching services and training and clinical services and training through the Duke

1

University Medical Systems, Inc.

2.      The Defendant Duke University School of Medicine (DU Med School) is a North Carolina non-profit educational institution with its principal place of business in Durham, Durham County North Carolina, and provides its students with academic services including clinical training delivered by physicians providing academic and teaching services and training and clinical services and training through the Duke University Medical Systems, Inc.

3.      The Defendant Duke University Medical Center (Hereafter, "DUMC") is a dba for Duke University Medical Systems, Inc, a North Carolina Non Profit Corporation with its principal place of business in Durham, Durham County North Carolina, and is "teaching hospital" providing academic training to students of Duke University and clinical services to patients of the DUMC and is often referred to as the Duke University Health System (DUHS).1

4.      The Defendant Private Diagnostic Clinic, PLLC ("PDC") is a North Carolina professional limited liability company with its principal place of business in Durham, Durham County North Carolina and jointly employs academic faculty members of the DU Med School to provide academic and teaching services and training and clinical services and training through the

---

1 DU, DU Med School, and DUMC shall be referred to together as DUHS throughout this Complaint.

Duke University Medical Systems, Inc.

5.     The Plaintiff is a citizen and resident of Wake County, North Carolina, and a former employee of Defendant DUHS and Defendant PDC.

6.     At all times relevant, Defendants DUHS and PDC were Plaintiffs' "joint employers."

7.     Defendants deliberately misclassified Plaintiffs as members, submitted inaccurate tax information returns in the form of W-2s and 1099s to the Internal Revenue Service ("IRS"), and failed to pay all wages and taxes owed, and at least in the case of Plaintiff Matthew Bruehl, M.D., made improper deductions from Plaintiffs' wages in violation of the North Carolina Wage and Hour Law ("NCWHA") and the Fair Labor Standards Act.

8.     Defendants engaged in this practice  so that they would not have to pay the employer portion of FICA, FUTA and other federal and state taxes, even though the Plaintiff and other similarly situated faculty physician employees of Defendants  were W-2 employees at all times when they were delivered academic training and medical care to Defendants' students and patients.

## NATURE OF THE ACTION, JURISDICTION, AND VENUE

9.     This is an action is filed under 26 U.S.C. § 7434 against Defendants for the filing of fraudulent tax returns with regard to wages paid Plaintiff and others similarly situated to him who worked as employees of both the DUHS

and the PDC.

10.     This is also an action filed under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 et seq. Plaintiff seeks payment for unpaid wages and liquidated damages due because of Defendants' violations of the minimum wage provisions of the FLSA for Plaintiff's last month of employment. Plaintiff further seeks reasonable attorney's fees and costs pursuant to 29 U.S.C.A. § 216(b).

11.     This is also an action alleging a violation of the N.C. Wage and Hour Act (NC WHA) under N.C. G.S. § 95-25.8 for illegal deductions from Plaintiff's paycheck.

12.     Jurisdiction is conferred on this Court by 29 U.S.C.A. § 216(b) of the FLSA, and under 26 U.S.C. § 7434, through 28 U.S.C. §§ 1331 (federal question) by 28 U.S.C.A. § 1331 as claims arising under laws of the United States and claims affecting commerce, 28 U.S.C.A. § 1337.

13.     Jurisdiction is conferred on this Court over Plaintiff's state law claim through 28 U.S.C. § 1367 (supplemental jurisdiction) over Plaintiff's claim brought under the NC WHA (N.C. G.S. § 95-25).

14.      Venue is appropriate in this jurisdiction because the unlawful events occurred in this district.

**STATEMENT OF FACTS**

15.     The Plaintiff is a licensed physician and was employed pursuant

4

to an Agreement made by the Defendant DU Med School and the PDC ("Agreement") at the time of the actions complained about in this Complaint. **Exhibit A.**

16. The Agreement consisted of an offer letter extended to Plaintiff on May 22, 2018, on the letterhead of Defendant DUMC, signed by: Ann M. Reed, MD, William Cleland Professor of Pediatrics, Chair, Department of Pediatrics, Physician-in-Chief, Duke Children's; John Sleasman, MD, Professor of Pediatrics, Chief, Division of Allergy, Immunology, and Pulmonary; and Paul R. Newman, Executive Director, Private Diagnostic Clinic; and this offer was accepted by Plaintiff on June 4, 2018.

## TERMS AND CONDITIONS OF JUNE 4, 2018 AGREEMENT

17. The Agreement provided that Plaintiff was offered a "faculty position in the Department of Pediatrics at Duke Health" working with the "faculty in the Division of Allergy, Immunology, and Pulmonary Medicine."

18. The Agreement further explained that the faculty position would also provide "an appointment as an Assistant Professor, Track IV (Clinician-Teacher) and, will be a member of the Private Diagnostic Clinic ("PDC"), our faculty practice plan."

19. The Agreement indicated that it was contingent upon several events: "Your appointment is contingent upon approvals, of the appropriate School of Medicine committees, the Dean of the School of Medicine, Chancellor

5

for Health Affairs, the President, Duke Visa Services if applicable, background check and the Board of Trustees."

20.     The Agreement between the Plaintiff and Defendants provided that Plaintiff's academic activities would account for approximately 10% of Plaintiff's time and would be performed for DUMC.

21.     The Agreement also provided that Plaintiff's clinical activities were to be performed by Plaintiff as a member of PDC and would account for approximately 90% of Plaintiff's time.

22.     Significantly, the offer made to Plaintiff and accepted by him provided a flat, not variable, annual rate of compensation for both his academic and clinical activities of $160,000, payable monthly.

23.     The Agreement provided that his monthly salary would be split between the PDC (87.5%) and the DUMC (12.5%).

24.     The Agreement also provided that with regard to benefits offered by the DUMC on behalf of itself and Defendant PDC: "As Regular Rank faculty, you will be eligible to participate in the benefits packages offered by Duke Health. Please review attached "Terms and Conditions" for more specifics.   You are also eligible for the benefits associated with PDC membership. Please call their office at 919-684-4358 if you would like additional information."

25.     The Agreement also stated that Plaintiff would "need to sign the

6

PDC Operating Agreement and related documents."

## PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS

26.     On or about September 6, 2018, Plaintiff attended "New Member Orientation Program" for the PDC conducted by the PDC "Benefits Representative."

27.     Both Plaintiff and the PDC Benefits Representative signed a document with two sections. The first section stated this: "I. You will be asked to complete and sign the following documents and/or applications." A series of documents were listed with a "DATE COMPLETED" line to the right of the document name. To the left of the document name, a box was included, presumably for checkmarks. **Exhibit B.**

28.     These documents included PDC labelled documents (i.e., PCD Direct Deposit Form, PDC Retirement Plan).

29.     These documents also included documents pertaining to Plaintiff's employment as a Duke Faculty member (i.e., PDC and Duke Faculty Benefits Summary).

30.     Section II of the document Plaintiff signed along with the PDC Benefits representative stated this: "The following documents will be provided to you on the PDC Intranet Site and it will be your responsibility to be familiar with each policy and/or agreement." This list also had a box to the immediate left of each item listed. The documents listed were as follows:

7

PDC Operating Agreement
Professional Courtesy Policy
New Physician Clinic Appointment Policy
Department Physician Notification
Expert Witness Policy
Opting out of Medicare Policy

31.     Plaintiff did not agree to comply with any such policies on the intranet, but only to be "familiar" with "each policy and/or agreement."

32.     At the time Plaintiff was asked to and did sign the New Member Orientation Program form, one policy listed was "Departing Physician Notification," which the New Member Orientation Program form stated could be found on the intranet, along with other documents.

33.     No "Departing Physician Notification" was actually among the policies on the Defendant's intranet. A policy with a somewhat similar name: "Departing Member; Patient Care; Confidential Information; Medical Documentation" policy and procedure #510.23 was adopted by the PDC several years prior to Plaintiff's employ and posted on the intranet.

34.     Plaintiff's first day of work with Defendants was September 10, 2018.

35.     On September 10, 2018, Plaintiff was asked to and did sign a document entitled a "Member Addendum." **Exhibit C.** This addendum was not attached to the PDC Member Agreement. **Exhibit D.**

36.     The Member Addendum states only that Plaintiff as "a member of

8

the faculty of Duke University . . . accepts all of the provisions and conditions thereof and agrees to be bound by such provisions and conditions as a Member of the Private Diagnostic Clinic." The Addendum did not contain any statement in which Plaintiff agreed to be bound by any policies or documents other than the PDC Operating Agreement.

37.    The PDC Operating Agreement provided to Plaintiff provided as follows:

> **5.3 Allocation and Distribution of Net Professional Fees**. The earnings of individual Members of a Department shall be determined by discussion and agreement between each individual Member and his or her PDC Physicians Department Chair. Since the continued success of PDC Physicians depends not only upon the amount of fees produced by also upon the efforts of the individual Members in discharging the full range of their duties at the Duke University Medical Center, the following factors may be considered in making the division of the earnings: (1) teaching of students, fellows, and house staff: (2) length of service; (3) research; (4) contribution to medical literature; (5) service in the clinics of Duke Hospital; (6) overall contribution to the Duke University Medical Center; (7) gross income produced; and (8) administrative duties in the management of PDC Physicians. Any one of said factors, such as gross income produced, may be the primary factor considered in the discussion between the Member and the appropriate Department Chair, in making the division of earnings.

> **5.4 Drawing Accounts**. Each Member shall have a monthly drawing account in an amount agreed upon between such Member and his or her Department Chair, which amount may be changed during a year if the Chair deems it desirable, and drawings from such account shall constitute charges against the Member's share of the PDC Physicians earnings for the year.

38.    Other than the Agreement entered into between the Plaintiff and

9

Defendants on June 4, 2018, Plaintiff never participated in any discussions of his earnings as a member of the PDC during his employment with Defendants.

39.     Plaintiff had no written agreement with his Department chair as to the contents of any drawing account with the PDC.

40.     Plaintiff was employed by the DUHS and paid a regular fixed monthly wage.  From his regular fixed monthly wage, payments for benefits were deducted (SELECT, VISION, HLTHREIB, PARKING).  From his regular fixed monthly wage, taxes were also deducted (federal and state income tax, MEDICARE, and OASDI). **Exhibit E.**

41.     Plaintiff was employed by the PDC and like his DUHS employer, the PDC also paid Plaintiff a regular fixed monthly wage.  From his regular fixed monthly wage, payments for benefits were deducted (life insurance, dental insurance, short term disability insurance, long term disability insurance, and identity theft protection insurance).  In addition, Plaintiff was also a member of the PDC and in addition to a regular monthly wage he received from the PDC, he also received periodic additional "earnings" from the PDC.  No taxes were deducted by the PDC from either the regular fixed monthly wage or the occasional additional earnings payments.  In the miscellaneous tab, of the PDC monthly earnings statement, it included an "employee ID" number.  The earnings statement included a "pay date" which was monthly at the same rate every month. **Exhibit F.**

42.     Under State law, the term "wage" includes "amounts promised when the employer has a policy or a practice of making such payments." The fixed regular monthly payments made by the DUHS and the PDC were wages under State law.

43.     On information and belief, PDC was formed as a professional liability company in 1997; it was organized as "manager managed."

44.     Plaintiff was not required to invest in the PDC.

45.     On information and belief in 2018 and 2019 Plaintiff was one of over 1000 "members" of the PDC.

46.     Plaintiff, and other similarly situated to him, were joint employees of the Defendant DUMC and Defendant PDC.

47.     While called "members" of the PDC, in fact Plaintiffs were treated like employees of both the Defendants.

48.     Plaintiffs and similarly situated employees worked as employees for both the Defendant DUMC and for the Defendant PDC.

49.     At all times relevant, Plaintiffs were W-2 employees of Defendants.

50.     Plaintiffs were never independent contractors for Defendants.

51.     Plaintiffs' status as "members" of the PLLC and the fact that they signed the PDC Operating Agreement does not mean that the earnings they received from the PDC was not wages within the meaning of the Fair Labor

11

Standards Act and under the Internal Revenue Code.

52.     Plaintiffs were not free to solicit their own clients at any time while employed by Defendants.

53.     Plaintiffs were required to treat all patients assigned to them by DUMC.

54.      Plaintiffs did not pay for their own marketing and advertising related to client solicitation.

55.      Plaintiffs were not required to purchase or pay for the equipment and tools necessary to perform their job.

56.      Plaintiffs' work schedules were set by Defendants.

57.      Defendant DUHS sets the employment policies and procedures by which Defendant operates; Defendant PDC requires compliance with those policies as a term and condition of employment with and membership in the PDC.

58.     Defendant DUHS sets the wage payment policies for Defendant DUHS. Defendant PDC sets the wage payment policies for employees and members of the PDC.

59.     Each Defendant has the authority to hire and fire employees like Plaintiff because Plaintiff's membership in the PDC was directly derivative from and conditioned upon Plaintiff's status as an employee of the DUHS and vice-versa.

60.     Plaintiff did not set the time, location or manner in which he performed medical services for the PDC or the DUHS and did not utilize his own equipment or tools.

61.     Upon information and belief, Defendant PDC has treated other similarly situated physician faculty employees the same way and wrongfully deducted from their wages amounts that the employees did not agree to have deducted.

62.     Upon information and belief, Defendant PDC has treated other similarly situated physician faculty employees the same way and failed to tax the amounts paid to them as wages.

63.     Plaintiffs were offered benefits through their employment with Defendants DUMC, DU Med School, and the PDC.

64.     Plaintiffs never agreed to receive 1099 wages from Defendant PDC for the work performed as physicians for any of the Defendants.

65.     Defendants never Plaintiffs and/or any other similarly situated employees that they would be considered paid via 1099 for any of their earnings for work they performed as professors in the DU Med School simultaneously while working as physicians for the PDC and treating DUMC patients and teaching DU Med School students.

66.     Defendants were aware of their obligation to pay Plaintiffs regular monthly fixed wages as W-2 wages, less standard deductions and withholdings,

but Defendants intentionally failed to do so to avoid paying their share of the taxes due on the wages.

67.     In an attempt to circumvent their responsibility as employers, the defendants set up an artificial distinction between services provided by Plaintiff as a faculty employee of the DU Med School and as a physician working for the PDC even though the Agreement between Plaintiff and Defendants and the PDC Operating Agreement both on their face made it clear that Plaintiff could not be PDC member without being a faculty member and that Plaintiff's offer was dependent on his signing the PDC Operating Agreement.

68.     In an attempt to circumvent their responsibility as employers, the defendants set up an artificial distinction between services provided by Plaintiff as a faculty employee of the DU Med School and as a physician working for the PDC even though DUMC patients treated by Plaintiffs were the subject of both their academic teaching responsibilities and their PDC physician clinical responsibilities.

69.      Defendants intentionally and willfully concocted a scheme whereby Defendants paid Plaintiff and those similarly situated to him as non-employees in order to defraud the United States government and avoid paying Defendants' portion of Plaintiffs' and other similarly situated employees' FICA and other payroll and other federal taxes.

14

70.     By classifying the wages promised in the Agreement as 87.5% payable by the PDC, the defendants avoided paying taxes on the vast majority of the salary of its faculty employees and physicians and willfully mispresented the amount of wages earned by all Plaintiffs on their W-2s for 2016 and 2017 by underreporting wages and excluding payments made by the PDC.

71.     Defendants issued Plaintiff both a W-2 and 1099 for payments received 2018 and 2019.

72.     The 1099 for 2018 and 2019 that Defendants issued to Plaintiff did not accurately reflect the total amount of 1099 pay Plaintiff received from Defendant in 2018-2019.

73.     Defendants' willful issuance of payments to Plaintiffs as 1099 payments caused harm to Plaintiffs because Plaintiffs were required to pay additional taxes on the wages, including Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

74.     Defendants' willful issuance of payments to Plaintiffs as 1099 payments constituted an improper deduction of Plaintiffs' wages because Plaintiffs were required to pay additional taxes on the wages, including Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

75.     Plaintiff gave notice of termination of his employment on or about June 28, effective as of July 31, 2019.

76.     Plaintiff's final paycheck for July 2019, which should have been $11,666.67, was instead $1,108.52.

77.     Defendant PDC without prior notice to Plaintiff and without his consent, withheld the sum of $10,558.15 from Plaintiff's wages.

78.     When Plaintiff complained about the deduction from his wages, he was told that he agreed to the deduction when he signed the PDC Operating Agreement and that he was a member, and not an employee, of the PDC.

79.     At all times while working for Defendants, Plaintiff was a joint employee of the PDC, the DU Med School, and the DUMC within the meaning of State law.

80.     The deduction from his paycheck violated the provisions of State law by withholding wages from Plaintiff's final pay without Plaintiff's consent or authorization.

81.     Plaintiff neither knew nor agreed in advance to the deduction from his wages nor did Plaintiff give written authorization to the deduction.

82.     Demand has been made upon PDC to restore the substantial deduction but they have failed and refused to reimburse these wages claiming Plaintiff was a "member" not an "employee" and as such was subject to the "policy" allowing such a deduction.

## CLASS ACTION

83.     The representative parties will fairly and adequately protect the

interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class. Plaintiffs' litigation will further class interests.

84.     A class action furthers judicial economy because Plaintiffs' claims and class claims require the same proof and elicit the same defenses.

85.     A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

86.     A class action permits a unified discovery and reduces burdensome duplicate discovery and discovery disputes.

87.     The class action applies to Count I, II, and III of Plaintiffs' Complaint.

88.     This class action incorporates all remedies sought under these counts and any other remedies the Court deems just.

## COUNT I - WILLFUL VIOLATIONS OF 26 U.S.C. § 7434

89.     All previous allegations of the Complaint are expressly incorporated herein.

90.     Defendants were responsible to submit accurate information returns for Plaintiff to the IRS.

91.     Defendants willfully and knowingly filed false and fraudulent W-2 forms that underreported Plaintiffs' earned wages because Defendants intentionally issued Plaintiffs' wage payments from the PDC for clinical and

17

academic teaching services as 1099 pay, without any federal or state deductions or withholdings, and failed to report such earning on Plaintiffs' W-2s.

92.     Defendants intentionally and knowingly issued Plaintiffs' payments from the PDC for clinical and academic teaching services as 1099 pay, and filed false and fraudulent W-2s with the IRS concerning Plaintiffs' employment wages, in order to save money and avoid paying payroll taxes, including the Defendants' portion of Plaintiffs' FICA and FUTA.

93.     Plaintiffs sue for redress under 26 U.S.C. § 7434, including actual damages sustained by the Plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), the costs of the action, and reasonable attorneys' fees.

## COUNT II – MINIMUM WAGE VIOLATIONS OF THE FLSA

94.     All previous allegations of the Complaint are expressly incorporated herein.

95.     Defendants' failed to pay Plaintiff and others similarly situated to him the minimum wages to which they are entitled under the FLSA during the month they deducted from wages owed under any and all policies it applied to departing physicians which purported to authorize the deduction from wages.

96.     Defendants have engaged in a policy, pattern, and practice of

18

violating the FLSA, as detailed in this Complaint, by applying policies alleged to be applicable to departing physicians to allow deductions from their wages due.

97. At all times relevant, Plaintiffs and Defendants were engaged in commerce and/or production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

98. At all times relevant, Plaintiffs were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

99. At all times relevant, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

100. Defendants were required to pay Plaintiffs minimum wages for all work performed at all times during their employment and to the present.

101. As a result of Defendants violations of the FLSA, have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

102. Defendants' unlawful conduct, as described in this Complaint, has been intentional and willful. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

19

Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

103. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**COUNT III - IMPROPER DEDUCTIONS UNDER THE NCWHA**

104. All previous allegations of the Complaint are expressly incorporated herein.

105. Defendants knowingly and willfully issued Plaintiff wages owed for academic training and clinical training and services as 1099 pay without any federal or state deductions or withholdings.

106. Plaintiff never agreed to work be paid via Form 1099 for any part of their wages.

107. The policies of Defendant DU and DUMC state wages owed will be paid, less standard deductions and withholdings, in accordance with standard payroll practices and procedures and as required by law.

108. Defendants' payroll practices violate the NCWHA because the deduction forced Plaintiff to pay Defendants' portion of federal and state taxes, was not authorized by the Plaintiffs, any law, or any regulation of a governmental unit.

109. Because Defendants issued Plaintiff's wages using Form 1099, Plaintiffs were required to pay additional federal and state taxes on those

20

wages, including Defendants' portion of the FICA and other federal and state taxes, deductions that were not allowed by the Commissioner, thereby denying Plaintiffs full consideration for the deduction that was made from the wages that had been earned.

110.    Defendants' willful issuance of Plaintiffs' payment for academic training and clinical training and services using a Form 1099 and the resulting increased tax liability paid by Plaintiffs constitutes an improper deduction of Plaintiffs' wages in violation of the NCWHA.

111.    In addition for as to Plaintiff, the deduction his last earnings payment by the PDC of $$10,558.15 was an improper deduction because Plaintiff was an employee and did not agree to a specific amount of deduction to his wages as required by the N.C. G.S. § 95-25.8.

112.    As a direct and proximate result of the Defendants' violation of state Wage and Hour laws and the wrongful withholding of wages from the Plaintiff, including the amount of unpaid minimum wages, plus interest at the legal rate, and liquidated damages in an amount equal to the amount found to be due as provided by law, and costs and fees of the action and reasonable attorneys' fees.

## RELIEF REQUESTED

113.    Plaintiffs request that Defendants be ordered to pay them:

a.    all owed wages resulting from Defendants' breach,

21

including any federal and state taxes that should have been paid by Defendants but for their breach,

b. any late fees and penalties levied by the IRS;

c. all taxes paid by Plaintiffs for which Defendants would have otherwise been responsible to pay;

d. liquidated damages pursuant N.C. G.S. § 95-25-22(a1) in the same amount as compensatory damages awarded;

e. the reasonable costs and expenses, including attorney's fees, of the Plaintiffs in this action pursuant to all federal and state law claims proved at trial; and

f. all pre- and post-judgment interest to which they are entitled.

114. Plaintiffs also request that Defendants be enjoined from continuing their unlawful payroll practices that violate the NCWHA.

115. Plaintiffs also request that that the Court award Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted, this the 19th day of July 2021.

/S/ VALERIE BATEMAN
NC State Bar: 13417
T/F 919-436-3592
FORREST FIRM, P.C.
406 Blackwell St., Suite 420
Durham, NC 27701
valerie.bateman@forrestfirm.com

22

/S/ RACHEL M. BLUNK
NC State Bar: 42694
T/F 336-663-1052
FORREST FIRM, P.C.
125 S Elm St., Suite 100
Greensboro,  NC 27401
rachel.blunk@forrestfirm.com

Attorneys for Plaintiff