## Valerie Bateman

| | |
|---|---|
| **From:** | Jennifer Reynolds |
| **Sent:** | Thursday, September 2, 2021 10:13 AM |
| **To:** | Michael Cohen (michael.cohen@ogletree.com) |
| **Cc:** | Valerie Bateman; Rachel Blunk |
| **Subject:** | Case 1:21-cv-00590-NCT-JLW BRUEHL v. DUKE UNIVERSITY et al |
| **Attachments:** | DOC 8 Amended Complaint w Exhibits.pdf; Waiver of Service DUHS_2021.08.16.pdf; 2021-09-02 Letter to M.Cohen MVA (DU) re waiver of service for DUHS_ (002).pdf |

Dear Mr. Cohen:

Please see the attached correspondence and attachments from Ms. Valerie Bateman.

Thank you,
Jen



**JENNIFER REYNOLDS**
**North Carolina State Bar Certified Paralegal**

125 S. Elm Street, Suite 100
Greensboro, NC 27401
(336) 275 - 6344 [phone + fax]

105 Grace Street, Suite 101
Wilmington, NC 28401

jennifer.reynolds@forrestfirm.com | www.forrestfirm.com

**CONFIDENTIAL & PRIVILEGED** Unless otherwise indicated or obvious from the nature of the foregoing communication, the information contained herein is attorney-client privileged and/or subject to the attorney work product doctrine. The communication is intended for the use of the individual or entity named above. If the reader of this transmission is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies, electronic, paper or otherwise, which you may have of this communication.

# FORREST FIRM

VALERIE BATEMAN
ATTORNEY

406 Blackwell Street, Suite 420, Durham, NC 27701 • valerie.bateman@forrestfirm.com • (919) 436-3592 [p+f]

September 2, 2021

Michael Cohen
Ogletree Deakins et al
8529 Six Forks Rd, Suite 600
Raleigh, NC 27615

RE:    Bruehl v. Duke University, et al.
       Civil Action No. 1:21-cv-590

Dear Michael:

Please see the attached Amended Complaint (and Exhibits) and advise whether you
will accept service on behalf of Defendant Duke University Health System, Inc.  If
so, a waiver of service is attached for your convenience.

I am assuming that you take the position that the offer extended to Dr. Bruehl on
the Duke University School of Medicine Department of Pediatrics letterhead
(Exhibit A to the Amended Complaint) was on behalf of Duke University itself.  If
this is NOT your position, please let me know at your earliest convenience.

With kind regards, I am

Sincerely,

**FORREST FIRM, P.C.**

*Valerie L Bateman*

VALERIE BATEMAN

Attachments:       Amended Complaint, Exhibits, Waiver of Service for DUHS Inc.

Asheville      Charlotte      Durham      Greensboro      Greenville      Raleigh      Wilmington      Winston-Salem

www.forrestfirm.com

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:21-cv-590

| | |
|---|---|
| MATTHEW BRUEHL, M.D., | |
| Plaintiff, | |
| v. | |
| DUKE UNIVERSITY, DUKE UNIVERSITY SCHOOL OF MEDICINE, DUKE UNIVERSITY HEALTH SYSTEM, INC. AND PRIVATE DIAGNOSTIC CLINIC, PLLC, | **AMENDED COMPLAINT** **(Class Action)** |
| Defendants. | |

NOW COMES PLAINTIFF, and on behalf of himself and other similarly situated individuals either currently or previously employed by the Defendants, complains of the Defendants, and alleges:

**PARTIES**

1.      Defendant Duke University ("DU") is a North Carolina non-profit educational institution with its principal place of business in Durham, Durham County North Carolina, and provides its students, including students of its school of medicine and in other allied fields, with academic services including clinical training delivered by physicians and

1

other health care professionals, as well as academic and teaching services, and training and clinical services and training, through the Duke University Health Systems, Inc.

2.      The Defendant Duke University School of Medicine ("DU Med School") is a division of Duke University capable of entering into contracts with employees, is a North Carolina non-profit educational institution with its principal place of business in Durham, Durham County North Carolina, and provides its students with academic services including clinical training delivered by physicians providing academic and teaching services and training and clinical services and training through the Duke University Health Systems, Inc.

3.      The Defendant Duke University Health Systems, Inc, ("DUHS") is a North Carolina Non Profit Corporation with its principal place of business in Durham, Durham County North Carolina, is a "teaching hospital" providing academic and clinical training to students of Duke University, and clinical services to patients at multiple locations. [1]

---

[1] DU, DU Med School, and DUHS shall be referred to together as either DUHS or the Duke Defendants throughout this Complaint.

4.     The Defendant Private Diagnostic Clinic, PLLC ("PDC") is a North Carolina professional limited liability company with its principal place of business in Durham, Durham County North Carolina and along with DU and DUHS jointly employs academic faculty members of the DU Med School to provide academic and teaching services and training and clinical services and training at various locations operated under the auspices of the Duke University Health Systems, Inc.

5.     The Plaintiff is a citizen and resident of Wake County, North Carolina, and a former employee of Defendant DU, DU Med School, DUHS and Defendant PDC.

6.     At all times relevant, Defendants DU, DU Med School, DUHS and PDC were Plaintiffs' "joint employers" and agents of one another for their mutual purposes of providing clinical health care services and academic training and education.

7.     Defendant PDC with the knowledge and consent of the other Defendants deliberately misclassified Plaintiffs as members, submitted inaccurate tax information returns in the form of W-2s and 1099s to the Internal Revenue Service ("IRS"), and failed to pay all wages and taxes owed, and at least in the case of Plaintiff Matthew Bruehl, M.D., made

3

improper deductions from Plaintiffs' wages in violation of the North Carolina Wage and Hour Law ("NCWHA") and the Fair Labor Standards Act.

8.      Defendants engaged in this practice so that they would not have to pay the employer portion of FICA, FUTA and other federal and state taxes, even though the Plaintiff and other similarly situated faculty physician employees of Defendants were W-2 employees at all times when they were delivered academic training and clinical medical care to Defendants' students and patients.

## NATURE OF THE ACTION, JURISDICTION, AND VENUE

9.      This is an action is filed under 26 U.S.C. § 7434 against Defendants for the filing of fraudulent tax returns with regard to wages paid Plaintiff and others similarly situated to him who worked as employees of both the DUHS and the PDC.

10.      This is also an action filed under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 et seq. Plaintiff seeks payment for unpaid wages and liquidated damages due because of Defendants' violations of the minimum wage provisions of the FLSA for Plaintiff's last month of employment. Plaintiff further seeks reasonable attorney's fees and costs

4

pursuant to 29 U.S.C.A. § 216(b).

11.    This is also an action alleging a violation of the N.C. Wage and Hour Act (NC WHA) under N.C. G.S. § 95-25.8 for illegal deductions from Plaintiff's paycheck.

12.    Jurisdiction is conferred on this Court by 29 U.S.C.A. § 216(b) of the FLSA, and under 26 U.S.C. § 7434, through 28 U.S.C. §§ 1331 (federal question) by 28 U.S.C.A. § 1331 as claims arising under laws of the United States and claims affecting commerce, 28 U.S.C.A. § 1337.

13.    Jurisdiction is conferred on this Court over Plaintiff's state law claim through 28 U.S.C. § 1367 (supplemental jurisdiction) over Plaintiff's claim brought under the NC WHA (N.C. G.S. § 95-25).

14.    Venue is appropriate in this jurisdiction because the unlawful events occurred in this district.

## STATEMENT OF FACTS

15.    The Plaintiff is a licensed physician and was employed pursuant to an Agreement made by the Defendant DU Med School, a division of DU, and the PDC ("Agreement") at the time of the actions complained about in this Complaint. **Exhibit A.**

16.    The Agreement consisted of an offer letter extended to

5

Plaintiff on May 22, 2018, on the letterhead of Defendant DU Med School, signed by: Ann M. Reed, MD, William Cleland Professor of Pediatrics, Chair, Department of Pediatrics, Physician-in-Chief, Duke Children's; John Sleasman, MD, Professor of Pediatrics, Chief, Division of Allergy, Immunology, and Pulmonary; and Paul R. Newman, Executive Director, Private Diagnostic Clinic; and this offer was accepted by Plaintiff on June 4, 2018.

### TERMS AND CONDITIONS OF JUNE 4, 2018 AGREEMENT

17. The Agreement provided that Plaintiff was offered a "faculty position in the Department of Pediatrics at Duke Health" working with the "faculty in the Division of Allergy, Immunology, and Pulmonary Medicine."

18. The Agreement further explained that the faculty position would also provide "an appointment as an Assistant Professor, Track IV (Clinician-Teacher) and, will be a member of the Private Diagnostic Clinic ("PDC"), our faculty practice plan."

19. The Agreement indicated that it was contingent upon several events: "Your appointment is contingent upon approvals, of the appropriate School of Medicine committees, the Dean of the School of

6

Medicine, Chancellor for Health Affairs, the President, Duke Visa Services if applicable, background check and the Board of Trustees."

20.    The Agreement between the Plaintiff and Defendants provided that Plaintiff's academic activities would account for approximately 10% of Plaintiff's time and would be performed for DU Med School.

21.    The Agreement also provided that Plaintiff's clinical activities were to be performed by Plaintiff as a member of PDC and would account for approximately 90% of Plaintiff's time.

22.    Significantly, the offer made to Plaintiff and accepted by him provided a flat, not variable, annual rate of compensation for both his academic and clinical activities of $160,000, payable monthly.

23.    The Agreement provided that his monthly salary would be split between the PDC (87.5%) and the DUHS (12.5%).

24.    The Agreement also provided that with regard to benefits offered by the DUHS on behalf of itself and Defendant PDC: "As Regular Rank faculty, you will be eligible to participate in the benefits packages offered by Duke Health. Please review attached "Terms and Conditions" for more specifics.  You are also eligible for the benefits associated with

7

PDC membership. Please call their office at 919-684-4358 if you would like additional information."

25.    The Agreement also stated that Plaintiff would "need to sign the PDC Operating Agreement and related documents."

<strong>PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS</strong>

26.    On or about September 6, 2018, Plaintiff attended "New Member Orientation Program" for the PDC conducted by the PDC "Benefits Representative."

27.    Both Plaintiff and the PDC Benefits Representative signed a document with two sections.  The first section stated this:  "I. You will be asked to complete and sign the following documents and/or applications." A series of documents were listed with a "DATE COMPLETED" line to the right of the document name.  To the left of the document name, a box was included, presumably for checkmarks. **Exhibit B.**

28.    These documents included PDC labelled documents (i.e., PCD Direct Deposit Form, PDC Retirement Plan).

29.    These documents also included documents pertaining to Plaintiff's employment as a Duke Faculty member (i.e., PDC and Duke Faculty Benefits Summary).

8

30.     Section II of the document Plaintiff signed along with the PDC Benefits representative stated this:  "The following documents will be provided to you on the PDC Intranet Site and it will be your responsibility to be familiar with each policy and/or agreement."  This list also had a box to the immediate left of each item listed.  The documents listed were as follows:

> PDC Operating Agreement
> Professional Courtesy Policy
> New Physician Clinic Appointment Policy
> Department Physician Notification
> Expert Witness Policy
> Opting out of Medicare Policy

31.     Plaintiff did not agree to comply with any such policies on the intranet, but only to be "familiar" with "each policy and/or agreement."

32.     At the time Plaintiff was asked to and did sign the New Member Orientation Program form, one policy listed was "Departing Physician Notification," which the New Member Orientation Program form stated could be found on the intranet, along with other documents.

33.     No "Departing Physician Notification" was actually among the policies on the Defendant's intranet. A policy with a somewhat similar name: "Departing Member; Patient Care; Confidential Information; Medical Documentation" policy and procedure #510.23 was

9

adopted by the PDC several years prior to Plaintiff's employ and posted on the intranet.

34.   Plaintiff's first day of work with Defendants was September 10, 2018.

35.   On September 10, 2018, Plaintiff was asked to and did sign a document entitled a "Member Addendum." **Exhibit C.** This addendum was not attached to the PDC Member Agreement. **Exhibit D.**

36.   The Member Addendum states only that Plaintiff as "a member of the faculty of Duke University . . . accepts all of the provisions and conditions thereof and agrees to be bound by such provisions and conditions as a Member of the Private Diagnostic Clinic." The Addendum did not contain any statement in which Plaintiff agreed to be bound by any policies or documents other than the PDC Operating Agreement.

37.   The PDC Operating Agreement provided to Plaintiff provided as follows:

> **5.3 Allocation and Distribution of Net Professional Fees**. The earnings of individual Members of a Department shall be determined by discussion and agreement between each individual Member and his or her PDC Physicians Department Chair. Since the continued success of PDC Physicians depends not only upon the amount of fees produced by also

10

upon the efforts of the individual Members in discharging the full range of their duties at the Duke University Medical Center, the following factors may be considered in making the division of the earnings: (1) teaching of students, fellows, and house staff: (2) length of service; (3) research; (4) contribution to medical literature; (5) service in the clinics of Duke Hospital; (6) overall contribution to the Duke University Medical Center; (7) gross income produced; and (8) administrative duties in the management of PDC Physicians. Any one of said factors, such as gross income produced, may be the primary factor considered in the discussion between the Member and the appropriate Department Chair, in making the division of earnings.

**5.4 Drawing Accounts**. Each Member shall have a monthly drawing account in an amount agreed upon between such Member and his or her Department Chair, which amount may be changed during a year if the Chair deems it desirable, and drawings from such account shall constitute charges against the Member's share of the PDC Physicians earnings for the year.

38. Other than the Agreement entered into between the Plaintiff and Defendants on June 4, 2018, Plaintiff never participated in any discussions of his earnings as a member of the PDC during his employment with Defendants.

39. Plaintiff had no written agreement with his Department chair as to the contents of any drawing account with the PDC.

11

40.    Plaintiff was employed by the DUHS and paid a regular fixed monthly wage.  From his regular fixed monthly wage, payments for benefits were deducted (SELECT, VISION, HLTHREIB, PARKING). From his regular fixed monthly wage, taxes were also deducted (federal and state income tax, MEDICARE, and OASDI). **Exhibit E.**

41.    Plaintiff was employed by the PDC and like his DUHS employer, the PDC also paid Plaintiff a regular fixed monthly wage. From his regular fixed monthly wage, payments for benefits were deducted (life insurance, dental insurance, short term disability insurance, long term disability insurance, and identity theft protection insurance).  In addition, Plaintiff was also a member of the PDC and in addition to a regular monthly wage he received from the PDC, he also received periodic additional "earnings" from the PDC.  No taxes were deducted by the PDC from either the regular fixed monthly wage or the occasional additional earnings payments.  In the miscellaneous tab, of the PDC monthly earnings statement, it included an "employee ID" number.  The earnings statement included a "pay date" which was monthly at the same rate every month. **Exhibit F.**

42.    Under  State  law,  the  term  "wage"  includes  "amounts

promised when the employer has a policy or a practice of making such payments." The fixed regular monthly payments made by the DUHS and the PDC were wages under State law.

43.    On information and belief, PDC was formed as a professional liability company in 1997; it was organized as "manager managed."

44.    Plaintiff was not required to invest in the PDC.

45.    On information and belief in 2018 and 2019 Plaintiff was one of over 1000 "members" of the PDC.

46.    Plaintiff, and other similarly situated to him, were joint employees of the Defendant DUHS and Defendant PDC.

47.    While called "members" of the PDC, in fact Plaintiffs were treated like employees of both the Defendants.

48.    Plaintiff, and similarly situated employees, worked for the Defendant DU, including Defendant DU Med School, Defendant DUHS and the Defendant PDC.

49.    At all times relevant, Plaintiff, and similarly situated employees, should have been only W-2 employees of Defendants.

50.    Plaintiff, and similarly situated employees, were never independent contractors for Defendants.

13

51.    Plaintiff's, and similarly situated employees, status as "members" of the PLLC and the fact that they signed the PDC Operating Agreement does not mean that the earnings they received from the PDC was not wages within the meaning of the Fair Labor Standards Act and under the Internal Revenue Code and that they were not employees.

52.    Plaintiff, and similarly situated employees, were not free to solicit their own clients at any time while employed by Defendants.

53.    Plaintiff, and similarly situated employees, were required to treat all patients assigned to them by DUHS.

54.    Plaintiff, and similarly situated employees, did not pay for their own marketing and advertising related to client solicitation.

55.    Plaintiff, and similarly situated employees, were not required to purchase or pay for the equipment and tools necessary to perform their job.

56.    Plaintiff's, and similarly situated employees, work schedules were set by Defendants.

57.    Defendants DUHS and DU/DU Med School set the employment policies and procedures by which Defendants operated and Defendant PDC required compliance with those policies as a term and

14

condition of employment with and membership in the PDC.

58.  Defendant DUHS set the wage payment policies for Defendant DUHS and DU/DU Med School. Defendant PDC sets the wage payment policies for employees and members of the PDC.

59.  Each Defendant has the authority to hire and fire employees like Plaintiff because Plaintiff's membership in the PDC was directly derivative from and conditioned upon Plaintiff's status as an employee of the DUHS and DU/DU Med School and vice-versa.

60.  Plaintiff did not set the time, location or manner in which he performed medical services for the PDC or the DUHS or the DU/DU Med School and did not utilize his own equipment or tools.

61.  Upon information and belief, Defendant PDC has treated other similarly situated physician faculty employees the same way and wrongfully deducted from their wages amounts that the employees did not agree to have deducted.

62.  Upon information and belief, Defendant PDC has treated other similarly situated physician faculty employees the same way and failed to tax the amounts paid to them as wages.

63.  Plaintiff, and similarly situated employees, were offered

benefits through their employment with Defendants DUHS, DU/DU Med School, and the PDC.

64. Plaintiff, and similarly situated employees, never agreed to receive 1099 wages from Defendant PDC for the work performed as physicians for any of the Defendants.

65. Defendants never informed Plaintiff and/or any other similarly situated employees prior to their employment that they would be paid via 1099 for any of their earnings for work they performed as professors in the DU Med School simultaneously while working as physicians for the PDC and for DUHS and while treating DUHS patients and teaching DU students and DU Med School students.

66. Defendants were aware of their obligation to pay Plaintiff, and similarly situated employees, regular monthly fixed wages as W-2 wages, less standard deductions and withholdings, but Defendants intentionally failed to do so to avoid paying their share of the taxes due on the wages.

67. In an attempt to circumvent their responsibility as employers, the Defendants attempted to set up an artificial distinction between services provided by Plaintiff as a faculty employee of the DU/DU Med

16

School and DUHS and as a physician working for the PDC and the DUHS, in the Agreement signed by Plaintiff.

68. The distinction was semantic only because the Agreement between Plaintiff and Defendant DU/DU Med School and the PDC Operating Agreement both on their face made it clear that Plaintiff could not be PDC member without being a faculty member and that Plaintiff's offer was dependent on his signing the PDC Operating Agreement.

69. The distinction was also in name only because DUHS patients treated by Plaintiff and other similarly situated employees was the subject of both their academic teaching responsibilities for DU/DU Med School and their PDC physician clinical responsibilities and those services, both academic and clinical, were all provided by Plaintiff and similarly situated individuals as employees, not independent contractors or as "members" of some entity which operated as a pass through for the DUHS to avoid paying taxes.

70. To the extent that DUHS relied upon the PDC and the DU/DU Med School to pay Plaintiff and other similarly situated employees, DUHS still operated as a joint employer of Plaintiff and other similarly situated employees who performed services for DUHS through

17

Defendants DU/DU Med School and the PDC.

71.   Defendants intentionally and willfully concocted a scheme whereby Defendants paid Plaintiff and those similarly situated to him as non-employees in order to defraud the United States government and avoid paying Defendants' portion of Plaintiffs' and other similarly situated employees' FICA and other payroll and other federal taxes.

72.   By classifying the wages promised in the Agreement as 87.5% payable by the PDC, the Defendants avoided paying taxes on the vast majority of the salary of its faculty employees and physicians and willfully mispresented the amount of wages earned by all Plaintiffs on their W-2s for 2016 and 2017 by underreporting wages and excluding payments made by the PDC.

73.   Defendants issued Plaintiff both a W-2 and 1099 for payments received 2018 and 2019.

74.   The 1099 for 2018 and 2019 that Defendants issued to Plaintiff did not accurately reflect the total amount of 1099 pay Plaintiff received from Defendant in 2018-2019.

75.   Defendants' willful issuance of payments to Plaintif and similarly situated employees, as 1099 payments caused harm to

Plaintiffs because Plaintiffs were required to pay additional taxes on the wages, including Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

76.    Defendants' willful issuance of payments to Plaintiff, and similarly situated employees, as 1099 payments constituted an improper deduction of Plaintiff, and similarly situated employees, wages because Plaintiff, and similarly situated employees, were required to pay additional taxes on the wages, including Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

77.    Plaintiff gave notice of termination of his employment on or about June 28, effective as of July 31, 2019.

78.    Plaintiff's final paycheck for July 2019, which should have been $11,666.67, was instead $1,108.52.

79.    Defendant PDC without prior notice to Plaintiff and without his consent, withheld the sum of $10,558.15 from Plaintiff's wages.

80.    When Plaintiff complained about the deduction from his wages, he was told that he agreed to the deduction when he signed the PDC Operating Agreement and that he was a member, and not an employee, of the PDC.

81.   At all times while working for Defendants, Plaintiff was a joint employee of the PDC, the DU Med School, and the DUHS within the meaning of State law.

82.   The deduction from his paycheck violated the provisions of State law by withholding wages from Plaintiff's final pay without Plaintiff's consent or authorization.

83.   Plaintiff neither knew nor agreed in advance to the deduction from his wages nor did Plaintiff give written authorization to the deduction.

84.   Demand has been made upon PDC to restore the substantial deduction but they have failed and refused to reimburse these wages claiming Plaintiff was a "member" not an "employee" and as such was subject to the "policy" allowing such a deduction.

## CLASS ACTION

85.   The representative parties will fairly and adequately protect the interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class. Plaintiffs' litigation will further class interests.

86.   A class action furthers judicial economy because Plaintiffs'

claims and class claims require the same proof and elicit the same defenses.

87.   A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

88.   A class action permits a unified discovery and reduces burdensome duplicate discovery and discovery disputes.

89.   The class action applies to Count I, II, and III of Plaintiffs' Complaint.

90.   This class action incorporates all remedies sought under these counts and any other remedies the Court deems just.

**COUNT I - WILLFUL VIOLATIONS OF 26 U.S.C. § 7434**

91.   All previous allegations of the Complaint are expressly incorporated herein.

92.   Defendants were responsible to submit accurate information returns for Plaintiff to the IRS.

93.   Defendants willfully and knowingly filed false and fraudulent W-2 forms that underreported Plaintiffs' earned wages because Defendants intentionally issued Plaintiff, and similarly situated employees', wage payments from the PDC for clinical and academic

21

teaching services as 1099 pay, without any federal or state deductions or withholdings, and failed to report such earning on Plaintiffs' W-2s.

94.    Defendants intentionally and knowingly issued Plaintiff, and similarly situated employees', payments from the PDC for clinical and academic teaching services as 1099 pay, and filed false and fraudulent W-2s with the IRS concerning Plaintiffs' employment wages, in order to save money and avoid paying payroll taxes, including the Defendants' portion of Plaintiffs' FICA and FUTA.

95.    Plaintiff, sues for redress under 26 U.S.C. § 7434, including actual damages sustained by the Plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), the costs of the action, and reasonable attorneys' fees.

## COUNT II – MINIMUM WAGE VIOLATIONS OF THE FLSA

96.    All previous allegations of the Complaint are expressly incorporated herein.

97.    Defendants failed to pay Plaintiff and others similarly situated to him the minimum wages to which they are entitled under the FLSA during the month they deducted from wages owed under any and

22

all policies it applied to departing physicians which purported to authorize the deduction from wages.

98.   Defendants have engaged in a policy, pattern, and practice of violating the FLSA, as detailed in this Complaint, by applying policies alleged to be applicable to departing physicians to allow deductions from their wages due.

99.   At all times relevant, Plaintiff, and similarly situated employees, and Defendants were engaged in commerce and/or production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

100.  At all times relevant, Plaintiff, and similarly situated employees, were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

101.  At all times relevant, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

102.  Defendants were required to pay Plaintiff, and similarly situated employees, minimum wages for all work performed at all times during their employment and to the present.

23

103. As a result of Defendants violations of the FLSA, have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

104. Defendants' unlawful conduct, as described in this Complaint, has been intentional and willful. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

105. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**COUNT III - IMPROPER DEDUCTIONS UNDER THE NCWHA**

106. All previous allegations of the Complaint are expressly incorporated herein.

107. Defendants knowingly and willfully issued Plaintiff wages owed for academic training and clinical training and services as 1099 pay without any federal or state deductions or withholdings.

24

108.    Plaintiff never agreed to work be paid via Form 1099 for any part of their wages.

109.    The policies of Defendant DU and DUHS state wages owed will be paid, less standard deductions and withholdings, in accordance with standard payroll practices and procedures and as required by law.

110.    Defendants' payroll practices violate the NCWHA because the deduction forced Plaintiff to pay Defendants' portion of federal and state taxes, was not authorized by the Plaintiffs, any law, or any regulation of a governmental unit.

111.    Because Defendants issued Plaintiff's wages using Form 1099, Plaintiffs were required to pay additional federal and state taxes on those wages, including Defendants' portion of the FICA and other federal and state taxes, deductions that were not allowed by the Commissioner, thereby denying Plaintiffs full consideration for the deduction that was made from the wages that had been earned.

112.    Defendants' willful issuance of Plaintiff's payment for academic training and clinical training and services using a Form 1099 and the resulting increased tax liability paid by Plaintiff constitutes an improper deduction of Plaintiffs='s wages in violation of the NCWHA.

113.  In addition, as to Plaintiff, the deduction his last earnings payment by the PDC of $10,558.15 was an improper deduction because Plaintiff was an employee and did not agree to a specific amount of deduction to his wages as required by the N.C. G.S. § 95-25.8.

114.  As a direct and proximate result of the Defendants' violation of state Wage and Hour laws and the wrongful withholding of wages from the Plaintiff, including the amount of unpaid minimum wages, plus interest at the legal rate, and liquidated damages in an amount equal to the amount found to be due as provided by law, and costs and fees of the action and reasonable attorneys' fees.

## RELIEF REQUESTED

115.  Plaintiff, on behalf of himself and other similarly situated individuals,  requests that Defendants be ordered to pay them:

  a.    all owed wages resulting from Defendants' breach, including any federal and state taxes that should have been paid by Defendants but for their breach,

  b.    any late fees and penalties levied by the IRS;

  c.    all taxes paid by Plaintiffs for which Defendants would have otherwise been responsible to pay;

26

    d.    liquidated damages pursuant N.C. G.S. § 95-25-22(a1)

in the same amount as compensatory damages awarded;

    e.    the reasonable costs and expenses, including attorney's

fees, of the Plaintiffs in this action pursuant to all federal and

state law claims proved at trial; and

    f.    all pre- and post-judgment interest to which they are

entitled.

116. Plaintiffs also request that Defendants be enjoined from continuing their unlawful payroll practices that violate the NCWHA.

117. Plaintiffs also request that that the Court award Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted, this the 16th day of August 2021.

/S/ VALERIE BATEMAN
NC State Bar: 13417
T/F 919-436-3592
FORREST FIRM, P.C.
406 Blackwell St., Suite 420
Durham, NC 27701
valerie.bateman@forrestfirm.com

/S/ RACHEL M. BLUNK
NC State Bar: 42694
T/F 336-663-1052
FORREST FIRM, P.C.
125 S Elm St., Suite 100

27

Greensboro,  NC 27401
rachel.blunk@forrestfirm.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **Amended Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel listed below:

> John A. Zaloom
> johnzaloom@mvalaw.com
> Moore & Van Allen PLLC
> Attorney for Defendant Private Diagnostic Clinic
>
> Bob A. Sar
> Bob.sar@ogletree.com
> Michael Cohen
> Michael.cohen@ogletree.com
> Ogletree Deakins et al
> Attorneys for Defendant Duke University

This the 16th day of August 2021.

> /s/    VALERIE L. BATEMAN
> FORREST FIRM, P.C.

29

# EXHIBIT  A

Offer Letter to
Matthew Bruehl, M.D.
by Duke University
School of Medicine,
Department of
Pediatrics 05.22.2018

 **Duke** Department of Pediatrics
Duke University School of Medicine

**Ann M. Reed, MD**
William Cleland Professor
Chair, Department of
Pediatrics
Physician-in-Chief, Duke
Children's

May 22, 2018

Matthew Bruehl, MD
14 Forest Glen Drive
Chapel Hill, NC 27517

Dear Matt:

It is with great pleasure that we write to offer you a faculty position in the Department of
Pediatrics at Duke Health. We are very excited about the prospect of having you join our faculty
in the Division of Allergy, Immunology, and Pulmonary Medicine, as we know that you will
make major contributions in advancing our academic and clinical mission.

You will have an appointment as an Assistant Professor, Track IV (Clinician-Teacher) and, will
be a member of the Private Diagnostic Clinic ("PDC"), our faculty practice plan. Your
appointment is contingent upon approvals, of the appropriate School of Medicine committees,
the Dean of the School of Medicine, Chancellor for Health Affairs, the President, Duke Visa
Services if applicable, background check and the Board of Trustees. You will also need to sign
the PDC Operating Agreement and related documents. Details of the offer are summarized
below:

1. **Appointment Rank:** Assistant Professor, Track IV (Clinician-Teacher)

2. **Anticipated Effective Date:** September 10, 2018

3. **Responsibilities and percentage of effort:**

Your clinical activities will be performed as a member of the PDC, and your academic activities
will be performed in your capacity as a Duke University School of Medicine faculty member.

   **Clinical 90 %:**

- You are expected to initially have three days of outpatient clinic sessions per week.
- Among the days of clinic, you will have:
  - 1 half-day in Cystic Fibrosis clinic
  - 5 half-days of general pediatric pulmonary
- You will be appointed the Associate Program Director of our Cystic Fibrosis Center, this
  will be 10% of your time.
- You will share the inpatient consult and bronchoscopy service and will split weekends
  and holidays on call coverage evenly among the other pulmonologists.

- Your clinical assignments will be reviewed and evaluated yearly with the Division Chief and will be adjusted as needed based on your career development, your outside funding, and the needs of the division.
- You are expected to attend Division of Allergy, Immunology, and Pulmonary Medicine faculty meetings and conferences, Department of Pediatrics Grand Rounds, the Chairman's Clinical Conference, and other CME programs as your schedule permits.

**Academic <u>10</u>%**

**Training/Education:**

- You will participate in didactic and clinical teaching of fellows, residents, and medical students in the inpatient and outpatient settings as part of the Pediatric Pulmonary curriculum.
- You will be expected to participate in Pediatric Pulmonary and AI conferences.
- You will be expected to attend at least 20 of the following conferences: Pediatric Grand Rounds, the Chairman's Clinical Conference, and the Department of Pediatrics Fellows Conference when your academic/clinical schedule does not conflict.

**Research:**
- Your research time will be dedicated to building a clinical research program with a focus in cystic fibrosis disorders or other pulmonary related diseases, this time will be protected for three years. Drs. Sleasman, ElMallah and Lang from Duke, and Dr. George Retsch-Bogart from UNC will serve as part of your mentor team for building this program; you will have access to the Children's Clinical Research Unit. After three years, your research time will be dependent on your salary support from internal or external grants.
- The Division will provider clinical research coordinator support for the first three years.
- We encourage you to develop research collaborations with faculty in the Department of Pediatrics and in the Division of Allergy, Immunology, and Pulmonary Medicine, consistent with your clinical activities and interests. Upon your arrival to Duke, the division will assist you in forming a faculty oversight committee to assess your progress and development for promotion to Associate Professor.

Administration:
- You will have limited administrative responsibilities during your first 2 years on the faculty, unless such responsibilities facilitate your academic interests.

4. **Compensation:** $160,000 per year

   Breakdown of Compensation:    University $20,000
                                 PDC   $140,000

5. **Other compensation:** The Department of Pediatrics has a new compensation structure that will include a supplemental pay component based on specific metrics across the three missions – education, research, and clinical. In addition, this compensation structure will include an 'at risk' component of the base salary for those who do not meet the stated expectations. You will be exempt from the 'at risk' and 'supplement' wRVU clinical component of the plan for the first year. You will be exempt from the 'at risk' portion of the research section for five years.

6. **Benefits:** As Regular Rank faculty, you will be eligible to participate in the benefits packages offered by Duke Health. Please review attached "Terms and Conditions" for more specifics.

   You are also eligible for the benefits associated with PDC membership. Please call their office at 919-684-4358 if you would like additional information.

7. **Resources to support you include:** Office Space: You will have office space in the Division of Allergy, Immunology, and Pulmonary Medicine office area.

   Other Support: You will receive clerical support from the Division of Allergy, Immunology, and Pulmonary Medicine clerical staff. You will receive a new computer and access to a printer, with computing and network support provided from DHTS.

   Mentor Program: Mentoring is a critical component of the professional development of our faculty and the well-being of the institution. Once you join the staff, we will work to identify mentors from Duke.

8. **Moving Expenses:** The PDC will issue a relocation allowance in the amount of $5,000. The payment will be included with your regular payroll and will be taxed at the time of the payment.

If your appointment to the Faculty must be postponed due to the meeting schedule of the Board of Trustees, you may be hired in the position of Instructor Temporary until your appointment can be approved. Your compensation and benefits in this position will match your Faculty compensation and benefits, but technically, you will not be a member of the Faculty until approved by the Board of Trustees.

We are very excited about the prospect of having you join the PDC and the faculty of the Department of (department) at Duke Health. If there are issues that we need to discuss further, please let me know. If you accept this position, please indicate at the bottom of this letter, and return one copy of the letter to the Chair's Office by June 8th, 2018. Please keep one copy for your files.

We are very much looking forward to your arrival at Duke.

Kind regards,

Ann M. Reed, MD
William Cleland Professor of Pediatrics
Chair, Department of Pediatrics
Physician-in-Chief, Duke Children's

John Sleasman, MD
Professor of Pediatrics
Chief, Division of Allergy, Immunology,
and Pulmonary

_____

Paul R. Newman
Executive Director, Private Diagnostic Clinic

I accept this offer as outlined above.

Signature _____ Date 6/4/18

Name: Matthew Bruehl, MD

cc: Susan Kline, Chief Administrator, Department of Pediatrics
cc: Peter Malinosky Sr. Business Manager, Division of Allergy, Immunology, and Pulmonary Medicine

**Standard Terms and Conditions for Regular Rank Faculty Appointment**

**Appointment Details:**

1.  Appointment Term:  Your initial appointment will be for a period of one year. It is anticipated that reappointment will be negotiated six months prior to the expiration of your initial term of appointment. In order to prepare proactively for reappointments and promotion, we encourage you to maintain records of your teaching activities and evaluations.

2.  CV:  Your home department will provide templates for organizing your *curriculum vitae* data in Duke format and for summarizing your teaching activities. Please contact Gloria Howard at 919-681-3839 or gloria.howard@duke.edu, for this information.

**<u>Minimum Faculty Effort Requirement for a Regular Rank Faculty Appointment</u>**

A *regular rank* faculty appointment requires a minimum of 10% academic effort, which can be achieved by one or any combination of options below:

1. Clinical teaching

   While providing direct patient care in a clinical setting, the faculty member personally has responsibility for the clinical supervision and/or education of a learner **for at least 40 days/year, 1 day/week or 2 months/year.**

   - A learner is defined as any Duke University MD, PA, NP, DPT students, residents, fellows or other Duke allied health students.
   - A clinical setting can be *an ambulatory clinic, operating room, hospital ward, intensive care unit, radiology room, pathology lab or any location where patient care is given.*

   The faculty member **must provide assessments** for these learners.
   Examples: Having a student/resident/fellow attend your clinic, scrubbing in the OR, participating in reading images, present and observing complex diagnostic procedures, looking at path slides, participating in the care of inpatients etc. **In essence having a learner included as part of your daily clinical care activity**

2. Research

   10% of total professional effort dedicated to the performance of research that is expected to lead to publication with the faculty member as a co-author

3. Administration

   10% of total professional effort dedicated to administration of a Duke University education or research program

*Any combination of the above that exceeds 10% of total professional effort meets this requirement.*

This requirement applies to all Medical School faculty appointments at any location both on and off campus. It is the responsibility of each department chair to make this assessment each year prior to appointment renewal to ensure minimum requirements continue to be met. This effort should result in University salary and benefits for faculty meeting this requirement.

**Benefits:** As Regular Rank Faculty, you will be eligible to participate in the benefits packages offered by the Duke University School of Medicine. You may view a summary of Faculty benefits at our Human Resources website http://www.hr.duke.edu. Benefits office: phone, (919) 684-5600.

**PDC Benefits:** In addition to the University benefits, you will be eligible to receive PDC benefits. Both the University and PDC retain the right to modify or rescind any portion of their fringe benefits packages at any time. You will be eligible for benefits according to the terms of applicable plans. You may call their office at 919-684-4358 if you would like additional information.

**Orientation:** Your benefits will also be discussed as part of your Duke University employee orientation, which will occur within 2 weeks of being hired. You should also arrange to meet with Peter Malinosky, Sr. Business Manager for the Division of Allergy, Immunology, and Pulmonary Medicine who can be reached at (919) 681-0358.

**Private Diagnostic Clinic Operating Agreement:** As a member of the PDC, you will need to sign a PDC Operating Agreement and other related documents, including a Non-Compete Agreement. A representative from the PDC will coordinate this with you.
**Medical licensure, DEA and hospital credentials (if applicable):** Please note that you cannot be hired and compensated until requirements for medical licensure, DEA and hospital credentials are fulfilled.

**Flu Vaccination:**
All Regular Rank Faculty who hold primary appointments in Clinical Departments are required to receive the flu vaccination. For faculty required to be vaccinated, non-compliance could result in denied access to Duke Health EMR and clinical facilities and/or an impact on performance evaluations. You may request a medical or religious exemption from vaccination. Exemption forms and instructions for completing the forms are available at **medschool.duke.edu/fluvaccinepolicy.** Flu vaccines will be available free of charge to all SoM faculty and staff. Beginning in September, times and locations for obtaining the vaccination will be available online at **duke.edu/flu/shots/.**

**University Policies:** As a University employee, you will be subject to all applicable University policies, as they may exist from time to time, including:

**University Policies:** As a full-time University employee, you will be subject to all applicable University policies, as they may exist from time to time, including:

1. Conflict of interest: http://provost.duke.edu/faculty-resources/faculty-handbook/
   - see Appendix O

2. Patents and Tangible research property http://provost.duke.edu/faculty-resources/faculty-handbook/
   - see Appendix P

3. Conflict of Interest Policy website and instructions:
   http://medschool.duke.edu/research/research-integrity-office

4. Faculty Handbook:    http://provost.duke.edu/faculty-resources/faculty-handbook/

5. School of Medicine:  http://medschool.duke.edu/



# EXHIBIT B

New Member PDC Orientation
form 2018.09.06

Case 1:21-cv-00590-NCT-JLW   Document 8-2   Filed 08/16/21   Page 1 of 2

## Private Diagnostic Clinic, PLLC
## New Member Orientation Program

Name: __Matthew James Bruehl , MD__

I.      **You will be asked to complete and sign the following documents and/or applications:**

| DOCUMENT | DATE COMPLETED |
|---|---|
| ☑ PDC & Duke Faculty Benefits Summary | 9/6/2018 |
| ☑ Benefit Statement Election | 9/6/2018 |
| ☑ Professional Liability Insurance Letter | 9/6/2018 |
| ☑ Member Addendum | 9/6/2018 |
| ☐ Non-Compete Agreement | will return |
| ☑ PDC Direct Deposit Form | 9/6/2018 |
| ☑ NC Privilege License Application | 9/6/2018 |
| ☑ Expert Witness Guidelines | 9/6/2018 |
| ☑ Life/AD&D Insurance Application | 9/6/2018 |
| ☑ Short Term Disability Insurance Application | 9/6/2018 |
| ☑ Long Term Disability Insurance Application | 9/6/2018 |
| ☑ Dental Insurance Application | 9/6/2018 |
| ☑ LifeLock Identity Theft Protection | 9/6/2018 |
| ☐ PDC Retirement Plan | |
| • Investment Election Form | |
| • Beneficiary Online Instructions | 9/6/18 |
| • Memorandum of Initial Meeting | 9/6/18 |

II.     **The following documents will be provided to you on the PDC Intranet Site and it will be your responsibility to be familiar with each policy and/or agreement.**

☐ PDC Operating Agreement
☐ Professional Courtesy Policy
☐ New Physician Clinic Appointment Policy
☐ Departing Physician Notification
☐ Expert Witness Policy
☐ Opting Out of Medicare Policy

The terms and conditions of your PDC policies, agreements and benefits are subject to change without notice.

_____ MD                          9/6/2018
Member Signature                                          Date

_____                              9/6/2018
PDC Benefits Representative                           Date

# EXHIBIT C

Addendum signed by Plaintiff
2018.09.10

THE PRIVATE DIAGNOSTIC CLINIC, PLLC
at
DUKE UNIVERSITY MEDICAL CENTER
DURHAM, NORTH CAROLINA

ADDENDUM TO COMPANY AGREEMENT

MEMBER

STATE OF NORTH CAROLINA )
                          ) ss.
COUNTY OF DURHAM          )

THE UNDERSIGNED, **Matthew James Bruehl , MD** , a member of the faculty of Duke University, hereby acknowledges that (s)he has read the Private Diagnostic Clinic Professional Limited Liability Company Operating Agreement of January 1, 1997, and hereby accepts all of the provisions and conditions thereof and agrees to be bound by such provisions and conditions as a Member of the Private Diagnostic Clinic.

IN WITNESS WHEREOF, the undersigned has executed this Addendum to the Private Diagnostic Clinic Company Agreement, under seal, as of the **10th** day of **September, 2018.**

_____ (L.S.)

CERTIFICATE OF ADMISSION AS MEMBER

THE UNDERSIGNED, **Ann M. Reed, MD,** Chairman of the Department of Pediatrics of the Private Diagnostic Clinic, PLLC, and the undersigned, **Paul R. Newman,** Executive Director of the Private Diagnostic Clinic, PLLC, hereby certify that **Matthew James Bruehl , MD** , has been admitted as a Member of the Company pursuant to the terms and conditions of Article 111 Paragraphs 3.1 and 3.2 of the Operating Agreement of the Private Diagnostic Clinic, PLLC and otherwise meets the requirements for Membership set forth therein.

IN WITNESS WHEREOF, the undersigned have executed this Certificate of Admission as of the **10th** day of **September, 2018.**

_____ (L.S.)

_____ (L.S.)

# EXHIBIT D

Private Diagnostic Clinic
Operating Agreement
effective 2015.09.15

## OPERATING AGREEMENT

## OF THE

## PRIVATE DIAGNOSTIC CLINIC, PLLC

### Effective September 11, 2015

### ARTICLE I

### Formation of the Company

**1.1** *Formation*.  The parties executing this Operating Agreement have previously practiced medicine together in a partnership known as the "Private Diagnostic Clinic, LLP" (the "PDC Partnership") and have formed this company as a North Carolina Limited Liability Company so as to continue such joint practice of medicine in a different legal structure.

**1.2** *Name*.  The name of this company is "Private Diagnostic Clinic, PLLC." This company will be referred to herein as "PDC Physicians."

**1.3** *Principal Place of Practice*.  The principal place at which PDC Physicians will practice medicine is the Duke Medical Center, Durham, North Carolina, but PDC Physicians may also establish centers for the practice of medicine in other communities.

**1.4** *Term*.  The term of this company will commence on the date set out in the Articles of Organization as filed with the Secretary of State of North Carolina and will continue until dissolved in accordance with the provisions of this Operating Agreement.

**1.5** *Transfer of Interest in PDC Partnership*.  By the formation of this company, the partners of the PDC Partnership, and such partnership itself, transfer all of the assets, accounts receivable, properties, supplies and books and records of the PDC Partnership to PDC Physicians as an uninterrupted continuation of that partnership's medical practice and business affairs, and PDC Physicians does assume all liabilities of the PDC Partnership, specifically including its agreement with Duke University dated October 9, 1972, as modified, and any agreements it may have with individual partners or former partners of the PDC Partnership.  The

==Effective September 11, 2015.==

interest of each partner in the PDC Partnership shall automatically without further action become an equivalent interest in PDC Physicians.

## ARTICLE II

### Purpose and History

2.1    *Purpose.*  The purpose of PDC Physicians, as has been the purpose of its predecessor, the PDC Partnership, is to provide a structure through which its Members can engage in the private practice of medicine for private gain, while retaining their academic relationship with Duke University, under circumstances affording an opportunity to maximum service to the public, the teaching arts, and the medical profession.  In furtherance of this overall purpose, PDC Physicians may engage in any lawful act or activity for which limited liability companies may be organized under North Carolina law.

2.2.    *History.* The PDC Partnership has been in existence at the Duke University Medical Center since September 15, 1931 and has operated under a formal partnership document since 1972.  The relationships that have developed over the years between the PDC Partnership and Duke University and between the individual physicians who have engaged, respectively, in the private practice of medicine within the framework of the PDC Partnership have proved to be mutually beneficial.  The Members agree that, except to the extent contrary to the provisions of this Agreement or to the extent changed pursuant to the terms of this Agreement, the existing methods of operation and organization of the PDC Partnership shall continue to serve as guidelines for the operation and organization of this company.

## ARTICLE III

### Members and Capital

3.1    *Membership in PDC Physicians*.  Each partner in the PDC Partnership on the date PDC Physicians commences shall automatically and without further action become a Member of PDC Physicians.  Each individual who hereafter holds an academic appointment to the faculty of Duke University School of Medicine and

Effective September 11, 2015                                         09/22/15

discharges academic responsibility as a teacher, medical investigator or administrator in connection with such appointment shall be eligible to be recommended to become a Member of PDC Physicians. No other individual shall be eligible to become a Member of PDC Physicians.

3.2 *Procedure for Membership*. Upon recommendation of the Chair of the Department of PDC Physicians in which a prospective new Member shall practice, an individual may be admitted as a Member of PDC Physicians by the favorable vote of a majority of the Members of said Department, provided that the new Member accept all of the provisions of this Agreement in writing and that the written acceptance be attached as an addendum to this Agreement. The appropriate Department Chair shall post in his or her office a written notice, for a period of ten (10) days, that an individual is proposed as a new Member of PDC Physicians within such Department. At the end of said the (10) day period, the favorable vote of a majority of the Members of the appropriate Department shall be presumed unless a meeting of such Department is called by twenty percent (20%) of the Members of such Department to consider and vote upon the proposed new Member. The appropriate Department Chair may, in his or her discretion, ascertain the votes of the Members of the Department in any other effective manner, including, but not limited to, personal letters, memoranda, and meetings.

3.3 *Cessation of Membership*. Except as may have been provided by special rules approved by a vote of the Members, the membership of any individual in PDC Physicians shall cease upon the occurrence of any one of the following: (i) when such individual ceases, for any reason, to be a member of the faculty of Duke University; or (ii) when such individual is adjudged a bankrupt. Moreover, any individual, other than the Department Chair, may be expelled from membership in PDC Physicians even though such Member continues to be a member of the faculty of Duke University, by the affirmative vote of two-thirds (2/3) of the Members of the PDC Physicians Department in which such Member practices, subject to the approval of the Board of Managers. Such vote shall be taken at a meeting of the appropriate Department, but only after at least twenty (20) days notice of the

meeting and the proposed reasons for expulsion have been given to the affected Member and the other Members of his or her PDC Physicians Department.

    **3.4** *Capital and Interest in PDC Physicians.* Presently, Members of PDC Physicians are not required to contribute any capital amount. Accordingly, each Member's interest in PDC Physicians is limited to his or her share of the company's earnings determined in accordance with the rules of the Department in which such Member practices. A Member has no interest in specific property of PDC Physicians and, as set out more fully in Section 8.5, a Member's interest in PDC Physicians may not be transferred or assigned. The Board of Managers is authorized to make investments or take other actions as in its judgment may be prudent that result in Members having capital accounts. The Board of Managers may approve a capital investment limited to the Members of one or more particular Departments so that the interest in such investment is specially allocated to only the Members in such Department. No such capital investment may be made by a Department without the approval of the Board of Managers.

## ARTICLE IV

### Organization and Management of PDC Physicians

    **4.1** *Organization.*

    (a)    PDC Physicians will be organized in Departments that correspond to the academic Departments of the Duke University School of Medicine.

    (b)    The Chair of each PDC Physicians Department shall be that person who is then serving as the Chair of the corresponding academic department of the Duke University School of Medicine (hereinafter referred to as the "Department Chair"). Each of such Chairmen is hereby appointed as the agent of the individual Members or his or her Department to act within the scope of the authority given him under this Agreement. It shall be the duty of each Department Chair to supervise the operation and administration of his or her Department; to consult, as hereinafter provided, with each Member within said Department concerning the Member's distributive share of PDC Physicians' earnings; to represent the best interests of

such Department concerning the payment of sums and the furnishing of services and facilities between PDC Physicians, Duke University; and DUHS; to propose new Members of PDC Physicians; to conduct a nomination procedure for nominating an At-Large Faculty Manager candidate; and to do all things which are necessary and proper for the continued growth and development of his or her PDC Physicians Department.

    **4.2**    *Board of Managers.*   Subject to provisions of this Agreement and to the law of North Carolina, a Board of Managers (the "Board") shall have the full authority and responsibility for managing and administering the affairs of the PDC Physicians and shall have the power and authority to do all things necessary or proper in the Board's judgment to conduct the business affairs of PDC Physicians not specifically reserved to the Members by this Agreement, including all of the powers granted by law to limited liability companies.

    **4.3** *Composition and Operation of the Board.*

    **(a)**     Each Department Chair is a Manager and, as such, is a member of the Board of Managers. There shall be: (i) an additional Manager for each Department, each of whom is known as an At-Large Faculty Manager; and (ii) additional At-Large Faculty Managers selected from Members practicing in the community division of PDC Physicians. At-Large Faculty Members shall be elected as set forth below:

    **(i)**     The At-Large Faculty Managers for each Department shall be elected by a majority of the Members of a Department.

    **(ii)**     The number of At-Large Faculty Managers selected from Members practicing in the community division of PDC Physicians shall be determined from time to time by the Board of Managers, provided that the minimum number of such At-Large Faculty Managers shall be two (2) and the maximum number of such At-Large Faculty Managers shall be six (6). The Members selected to serve as At-Large Faculty Managers shall be elected by a majority vote of the Board of Managers.

    **(iii)**     Each At-Large Faculty Manager will serve a two year term beginning on July 1 and ending on June 30 of the second following year; provided that each

At-large Faculty Manager shall continue to serve until his or her successor is elected in the manner set forth above.  An elected At-Large Faculty Manager may be reelected for one additional consecutive term but shall not again be eligible to be elected until after the expiration of two years following completion of his or her last term as an At-Large Faculty Manager.  Notwithstanding the above, the Board of Managers, by majority vote of all Managers other than the affected At-Large Faculty Member, may agree to extend the second two year term for up to an additional two years and allow the At-Large Faculty Member to serve through the extended term.

(iv)    The Chancellor for Health Affairs and the Vice Chancellor for Health Affairs of Duke University shall be ex-officio members of the Board of Managers but shall have no vote on any matter before the Board.  The Executive Medical Director and Primary Care Medical Director shall be ex-officio members of the Board of Managers, but shall have no vote on any matter before the Board.

(b)    The Board shall elect a Chair of the Board for a two-year term from among its members by an affirmative vote of a majority of the members of the Board.

An elected Chair of the board may be re-elected for one additional consecutive term but shall not again be eligible to be elected as Chair until two years after the completion of his or her term as Chair.  The Board may, but need not, elect a Vice Chair of the Board to preside at meetings in the absence of the Chair of the Board.

(c)    The Board may designate one or more committees, each committee to consist of two or more of the Managers.  Any such committee shall have such authority as the Board may specify in the resolution designating such committee.

(d)    The Board may also designate one or individuals as an officer of PDC Physicians (an "Officer") whether or not such person is a Member or a Manager.  Subject to the terms of this Agreement, the Board may delegate to any Officer any of the powers and authority vested in the Board on such terms and conditions as it may deem appropriate, provided, however, that any material action

by PDC Physicians out of the ordinary course of its business shall be specifically authorized or ratified by the Board.

(e)     A quorum for the transaction of any business shall be a majority of the Managers then in office.  All actions of the Board will normally be taken by a vote of the Managers in attendance at the meeting with each Manager having one vote; provided, however, that if four of the Managers call for a vote by the Members on a proposed action, then such action shall be taken only if it is approved by a majority of all of the Members of the company at, or following, a special meeting of the Members to consider the matter.  The Board may establish, and from time to time change, rules for the conduct of its meetings and for taking actions authorized by this Agreement.

4.4.     *Indemnification of Managers.*  Each Manager shall be indemnified by PDC Physicians to the full extent provided by North Carolina law.

4.5.     *Professional Decisions.*  Professional decisions relating to patient care, including diagnostic, therapeutic, and other similar decisions, shall be the responsibility of the individual Member physician treating such patient, subject to the general supervision of the appropriate Department Chair.

4.6.     *Business Office.*  There shall be a single Business Office for PDC Physicians consisting of such Officers and staff as the Board of Managers may determine.  The Business Office shall perform the following functions pursuant to the policies, directions and contractual arrangements of the Board of Managers and Officers of PDC Physicians:

> ----accounting and purchasing services,
>
> ----collecting of professional fees,
>
> ----acquiring the services of personnel through Duke University or DUHS
>
> ----maintaining all books and records (other than Duke Hospital patient records) reflecting the practice and affairs of PDC Physicians,
>
> ----performing such other administrative services as are needed for the orderly conduct of PDC Physicians' practice,

----conduct other duties undertaken in Administrative Services contracts or agreements, _e.g._, the agreement to bill and collect Duke Hospital technical charges.

## ARTICLE V
### Professional Fees

**5.1** *Professional Fees.* **Professional fees shall be established by the Business Office of PDC Physicians pursuant to policies, directions and contractual arrangements of the Board of Managers. Each Member of PDC Physicians agrees that he or she will conduct all clinical services through, and as a member of, PDC Physicians and that all of his or her professional fees for clinical services will be collected by PDC Physicians. Compensation received from Duke University for the performance of teaching duties to Duke University and compensation from the United States of America for service at the Veterans Administration Hospital shall not be paid over to PDC Physicians.**

**5.2** *Payments from Gross Professional Fees.* **Gross professional fees remitted to PDC Physicians shall be expended and applied as follows:**

**(a) Payment shall be made to Duke University in consideration of facilities, goodwill, use of the Duke name, non-professional services, and other valuable consideration rendered by the University to PDC Physicians, which payment shall be determined in accordance with the terms of a contract between the PDC Partnership and Duke University, dated October 9, 1972, as modified from time to time.**

**(b) Payment shall be made for all other operating expenses of PDC Physicians, not payable to Duke University, including but not limited to the following: Any employees of PDC Physicians (not including employees of Duke University for whose services reimbursement is made under paragraph (a) above), and other PDC Physicians expenses, such as certain equipment, supplies, telephone, and property and general liability insurance (not including goods and services**

furnished by Duke University for which reimbursement is made under paragraph (a) above).

(c)     Professional liability insurance shall be maintained with respect to PDC Physicians and its Members in such amounts and with such insurers as the Board of Managers may from time to time determine.

(d)     The balance of the gross professional fees shall constitute the net earnings of PDC Physicians and shall be divided among the Departments in the following manner:  A separate accounting shall be kept of the gross income produced by each Department of PDC Physicians and against this gross income of each Department there shall be charged payments made under paragraphs (a), (b) and (c) above which are incurred directly by, or are allocable to, the Department as determined by the Business Office and approved by the Board of Managers.  Fees for services and operating expenses clearly attributable to a single Department may not be allocated to any other Department by action of the Board of Managers except upon the express concurrence of the Chair of both such Departments.  Fees for services and operating expenses not clearly attributable to a single Department, as for example, fees paid on a capitation basis, shall be allocated among the Departments involved by the Business Office pursuant to such instructions and guidelines as the Board of Managers may adopt.   The earnings of individual Members of a Department as determined under Section 5.3 below shall then be paid from such Department's net earnings.

5.3     *Allocation and Distribution of Net Professional Fees*.  The earnings of individual Members of a Department shall be determined by discussion and agreement between each individual Member and his or her PDC Physicians Department Chair.  Since the continued success of PDC Physicians depends not only upon the amount of fees produced by also upon the efforts of the individual Members in discharging the full range of their duties at the Duke University Medical Center, the following factors may be considered in making the division of the earnings:  (1)  teaching of students, fellows, and house staff: (2)  length of service;  (3) research; (4) contribution to medical literature; (5) service in the clinics of Duke Hospital; (6) overall contribution to the Duke University Medical Center;

(7) gross income produced; and (8) administrative duties in the management of PDC Physicians.  Any one of said factors, such as gross income produced, may be the primary factor considered in the discussion between the Member and the appropriate Department Chair, in making the division of earnings.

    **5.4**    *Drawing Accounts.*  **Each Member shall have a monthly drawing account in an amount agreed upon between such Member and his or her Department Chair, which amount may be changed during a year if the Chair deems it desirable, and drawings from such account shall constitute charges against the Member's share of the PDC Physicians earnings for the year.**

    **5.5**    *Bank Accounts.*  **PDC Physicians may maintain such bank accounts as the board of Managers determine.  The Board shall grant signature authority with respect to such accounts to such Managers and Officers as they Board may determine.**

## ARTICLE VI
### Meetings of Members

    **6.1.**    *Annual and Special Meeting.*  **The annual meeting of PDC Physicians shall be held at a time during December of each year and in such place as the Board of Managers shall determine for the conduct of such business as may come before the meeting.  Other periodic meetings or special meetings of the Members for any purpose may be called for any date during the year by the Board on its own initiative and a special meeting shall be called by the Board if requested in writing by twenty percent (20%) of the Members of the PDC.  If the purpose of a special meeting being requested by Members is to resolve a matter in a manner different from the action taken by the Board of Managers on such matter, the written requests by twenty percent (20%) of the Members must be received by the Board not later than thirty (30) days after notice is given Members of the action taken by the Board of Managers.**

    **6.2.**    *Notice of Meetings.*  **Written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall normally**

be delivered not less than (20) days before the date of the meeting personally or by mail, but the Board of Managers can schedule a special meeting on as little as seven (7) days notice.

      6.3.    *Manner of Acting at Meeting.*  At the annual and any regularly scheduled periodic meeting, the Board of Managers shall report to, and discuss with, the Members the actions they have taken on behalf of the Company and the matters on the agenda for such meeting.  No affirmative vote of the Members shall be required with respect to such report.  At any special meeting called at the written request of twenty percent (20%) of the Members to consider an action taken by the Board of Managers on a matter, or at any meeting as to a matter that the Board of Managers has determined should be submitted to the Members for vote, the matter shall be decided by the Members in attendance only if a majority of all Members of the Company are in attendance and vote in favor of a resolution of such matter.  In the absence of such a majority of all of the Members, if a majority of the Members in attendance so direct, a proposed resolution of such matter shall be submitted to a vote of all Members by written ballot, and such proposed resolution shall be the action taken on such matter if the proposed resolution is approved in writing by a majority of all Members of the Company.

## ARTICLE VII
### Books and Records

    7.1    *Accounting Period and Method.*  The accounting period for PDC Physicians shall be the calendar year and its books and records shall be kept and made on the basis of cash receipts and disbursements method of accounting currently in use by the PDC Partnership.

    7.2    *Records and Reports.*  The Board of Managers shall cause the Business Office to maintain records and accounts of all operations and expenditures of PDC Physicians.  The Board shall set standards for access to such books and records, and in setting such standards the Board shall have the right to keep confidential for such period of time as the Board deems reasonable any information in the disclosure of which the Board in good faith believes is not in the best interest of PDC Physicians.

**7.3** *Records are Property of the Company.* All books of account of PDC Physicians, all patients' financial records, and any all other books, records (other than Duke Hospital patients records), documents, and papers reflecting the practice and affairs of the PDC Physicians, or any part thereof, shall be the sole property of PDC Physicians.

**ARTICLE VIII**

**Withdrawal, Retirement, Disability,**

**Death or Other Cessation of**

**Membership of a Member**

**8.1** *Dissolution..* PDC Physicians shall be dissolved upon the occurrence of any of the following events:

**(a)** The vote of a majority of the Members; or

**(b)** an act requiring dissolution under Section 57C-6-01 of the North Carolina General Statutes or any successor provision.

No decision to dissolve PDC Physicians and to wind up its affairs will in any way interfere with the formation of a company or other entity by such Members as wish to continue practicing together.

**8.2** *Deceased or Incompetent Member.* The estate of the deceased Member, or of a Member adjudged to be incompetent, shall be entitled to such share of the PDC Physicians earnings for the fiscal year in which death or incompetence occurred as is determined in accordance with the rules of the Department in which such Member practiced. In any event, an accounting shall be made with the estate of such Member no later than the end of the fiscal year of PDC Physicians in which the death of the Member occurred. Any and all agreements relating to death, retirement, or disability between individual Members and their respective Departments, which are in effect at the time of the execution of this Agreement, shall continue in full force and effect.

**8.3** *Withdrawing Member.*

**(a)** A Member ceasing to be a Member of PDC Physicians by reason of retirement, disability (whether partial or total), or involuntary call into military

service shall be entitled to continue to share in the net earnings of PDC Physicians in accordance with the rules of the Department in which such Member practiced. "Partial disability" shall mean incapacity by reason of health to perform full-time services as a Member which does not require complete retirement.

(b)  In the absence of Department rules, a Member withdrawing from PDC Physicians for any reason (including retirement, disability, death, involuntary call into military service, termination of employment by Duke University, or expulsion from the company) shall be entitled to a share of net earnings only to the time of his or her cessation of membership.

(c)  A Member who has withdrawn from PDC Physicians for whatever reason, or the estate of a deceased or incompetent Member, shall have no rights to participate in decisions of PDC Physicians or, except as provided above, to share in any earnings thereof.  Until all payments under this paragraph have been made to a Member who has withdrawn from PDC Physicians, or to the estate of a deceased or incompetent Member, such Member or the personal representative of such Member shall be entitled to reasonable access to such books of the company, as may be relevant only to the individual Member's participation.  When such Member or the estate of such Member shall have received the payments provided in this section, such Member or such estate shall have no further interest in PDC Physicians or in its earnings or records.

(d)  If a Member has a capital account on the books of PDC Physicians at the time of his or her withdrawal or death, the amount of such capital account shall be promptly paid to such withdrawn Member or his or her estate.

(e)  The Members intend that payments under this section shall be a distributive share of partnership income or guaranteed payment under section 736(a) of the Internal Revenue Code of 1986 or any similar provision of any subsequent federal tax law.

8.4  *Computations Based on Books of PDC Physicians.*  All determinations and computations to be made under this paragraph in order to determine the payments to be made hereunder in liquidation of the interest of a deceased, disabled, retired, or other withdrawn Member shall be based on the books of

Effective September 11, 2015                                                09/22/15

13

account of PDC Physicians, without special audit by an independent accountant or other person, except that any person desiring such an audit may, at his or her own cost and expense, have an audit made of the Member's interest by the independent accountants regularly employed by PDC Physicians.

    8.5    *Member's Interest Not Transferable.*  A Member ceasing for any reason to be a Member of PDC Physicians, or his or her estate, shall have no interest in any capital or properties of PDC Physicians and shall not be entitled to any accounting from PDC Physicians for properties owned by it at the time of cessation of membership except to the extent provided in Section 8.2 or 8.3 above.  The Members intend that those payments described in such Sections shall be made pursuant to contractual agreement and shall not be distributions of identifiable company assets.  No Member of PDC Physicians may assign, encumber, or in any manner dispose of all or any part of his or her interest in the company.

## ARTICLE IX

### Amendment and Miscellaneous

    9.1    *Amendment.*  The provisions of this Agreement and of the company's Articles of Organization may be amended from time to time by a vote or written consent (ballot) of a majority of the Members. Any such vote, written consent or balloting may be taken with or without a meeting of Members, and any vote or balloting may be conducted electronically by any reasonably secure means that allows votes, ballots or consents to be recorded and stored in any reasonable electronic media.

    9.2    *Agreement Binding Upon Successors.*  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors.

    9.3    *Severability.*  If any one or more of the provisions of this Agreement shall be held to be invalid or unenforceable, the validity and enforceability of the remaining provisions shall not be affected thereby.

**9.4** *Gender Reference.* Whenever the context so requires, the use of the masculine gender in this Agreement shall be construed to include the feminine gender.

**9.5** *Certified Public Accountant.* PDC Physicians shall employ a certified public accountant to conduct an annual audit of its books. The personnel of the Business Office shall be under such fidelity bonds as are determined by the Board of Managers.

**9.6** *Vacation and Expenses.*

    (a) The period of annual vacation of each Member shall be determined by mutual agreement of the individual Member and the appropriate Department Chair.

    (b) Expenses such as, but not limited to, the following may be paid by PDC Physicians according to departmental rules: certain medical equipment; medical society dues; subscription fees to medical literature; and travel and related expenses, only of the individual Member, to attend professional meetings and conventions. Unauthorized expenses, to the extent that they are in fact paid by PDC Physicians, shall be charged against the Member's distributive share of income.

**9.7** *Effective Date.* This Operating Agreement shall become effective upon the later to occur of (i) the signature of not less than two-thirds of the partners in the PDC Partnership, and (ii) the filing of Articles of Organization of the company with the Secretary of State of North Carolina. The partners in the PDC Partnership executing this document do hereby authorize the members of the Administrative Board of the PDC Partnership to execute and file such Articles of Organization at such time as they consider proper and thereupon to take office as the Board of Managers in this company.

    *IN WITNESS WHEREOF,* the partners of the PDC Partnership have signed and sealed this Agreement.

**Effective September 11, 2015**                                        09/22/15

16

# EXHIBIT  E

## DUMC Payroll Statements

## 09.25.2018 - 07.31.2019

Voucher No: 25660531

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | ORG.KEY | PER.END | CHECK DATE |
|------|----------------|---------|---------|------------|
| MATTHEW J BRUEHL | 00908891 | DDSF | 07/31/2019 | 07/25/2019 |

| | | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|---|
| RATE: | 1,666.67 | | | | |
| RATE EFFECTIVE DATE: | 09/10/2018 | | | | |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | | FED | M | 00 | 0.00 |
| POSITION EFFECTIVE DATE: | 09/10/2018 | NC | M | 00 | 0.00 |
| RESIDENT TAX STATE: NC | | | | | |
| WORK TAX STATE: NC | | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|-----------|---|------------|---|-------|---|------------|---|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 11.41 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.91 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 109.36 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|-------------------|---------------------|

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|-----------|--------|---------|---------------|-------|------------|---------|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 109.36 | 6.00 | 982.06 |

YEAR TO DATE TOTALS                              RETIREMENT CONTRIBUTIONS

| | | | CURRENT EMPLOYER CONTRIBUTION | YTD EMPLOYEE CONTRIBUTION | YTD EMPLOYER CONTRIBUTION |
|---|---|---|---|---|---|
| GROSS | 11,666.69 | | | | |
| PRETAX | 3,984.75 | VENDORS | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 7,681.94 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 346.55 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 98.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 111.39 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 476.28 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | ORG.KEY | PER.END | CHECK DATE |
|---|---|---|---|---|
| MATTHEW J BRUEHL | 00908891 | DDSF | 09/30/2018 | 09/25/2018 |

| RATE: 1,666.67 | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|
| RATE EFFECTIVE DATE: 09/10/2018 | | | | |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | FED | S | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | NC | S | 00 | 0.00 |
| RESIDENT TAX STATE: NC | | | | |
| WORK TAX STATE: NC | | | | |

| GROSS PAY | | PRETAX DED | TAXES | | DEDUCTIONS |
|---|---|---|---|---|---|
| SALARY | 1,250.00 | | FED | 97.13 | |
| TOTAL | 1,250.00 | | NC | 29.00 | |
| | | | MEDICARE | 18.13 | |
| | | | OASDI | 77.50 | |
| | | | Total | 221.76 | |

| | TAX DEFERRED DEDS | POST TAX RETIREMENT | |
|---|---|---|---|

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|
| 1,250.00 | 0.00 | 0.00 | 1,250.00 | 221.76 | 0.00 | 1,028.24 |

YEAR TO DATE TOTALS                    RETIREMENT CONTRIBUTIONS

| | | VENDORS | CURRENT EMPLOYEE CONTRIBUTION | YTD EMPLOYEE CONTRIBUTION | YTD EMPLOYER CONTRIBUTION |
|---|---|---|---|---|---|
| GROSS | 1,250.00 | | | | |
| PRETAX | 0.00 | | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 1,250.00 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 97.13 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 29.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 18.13 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 77.50 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | | ORG.KEY | PER.END | CHECK DATE |
|---|---|---|---|---|
| MATTHEW J BRUEHL | DUKE UNIQUE ID 00908891 | DDSF | 10/31/2018 | 10/25/2018 |

| RATE: 1,666.67 | | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|---|
| RATE EFFECTIVE DATE: 09/10/2018 | | | | | 0.00 |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | | FED | S | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | | NC | S | 00 | |
| RESIDENT TAX STATE: NC | | | | | |
| WORK TAX STATE: NC | | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|---|---|---|---|---|---|---|---|
| SALARY | 1,666.67 | SELECT | 383.00 | FED | 32.89 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | MEDICARE | 9.24 | TOTAL | 6.00 |
| | | HLTHREIM | 166.67 | OASDI | 39.51 | | |
| | | VISION1X | 18.50 | Total | 81.64 | | |
| | | SELECT1X | 383.00 | | | | |
| | | PARKING | 59.75 | | | | |
| | | TOTAL | 1,029.42 | | | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|---|---|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|
| 1,666.67 | 1,029.42 | 0.00 | 637.25 | 81.64 | 6.00 | 549.61 |

YEAR TO DATE TOTALS                    RETIREMENT CONTRIBUTIONS

| | | VENDORS | CURRENT EMPLOYER CONTRIBUTION | YTD EMPLOYEE CONTRIBUTION | YTD EMPLOYER CONTRIBUTION |
|---|---|---|---|---|---|
| GROSS | 2,916.67 | | | | |
| PRETAX | 1,029.42 | | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 1,887.25 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 130.02 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 29.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 27.37 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 117.01 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | | | ORG.KEY | PER.END | CHECK DATE |
|------|--|--|---------|---------|------------|
| MATTHEW J BRUEHL | DUKE UNIQUE ID | 00908891 | DDSF | 11/30/2018 | 11/21/2018 |

| RATE: 1,666.67 | | M/S | EXEMPTION | ADD'L AMTS |
|----------------|--|-----|-----------|------------|
| RATE EFFECTIVE DATE: 09/10/2018 | | | | |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | FED | S | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | NC | S | 00 | 0.00 |
| RESIDENT TAX STATE: NC | | | | |
| WORK TAX STATE: NC | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|-----------|--|------------|--|-------|--|------------|--|
| SALARY | 1,666.67 | SELECT | 383.00 | FED | 73.04 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 17.00 | TOTAL | 6.00 |
| | | HLTHREIM | 166.67 | MEDICARE | 15.06 | | |
| | | PARKING | 59.75 | OASDI | 64.40 | | |
| | | TOTAL | 627.92 | Total | 169.50 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|-------------------|---------------------|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|-----------|--------|---------|---------------|-------|------------|---------|
| 1,666.67 | 627.92 | 0.00 | 1,038.75 | 169.50 | 6.00 | 863.25 |

YEAR TO DATE TOTALS                    RETIREMENT CONTRIBUTIONS

| | | | CURRENT EMPLOYEE | YTD EMPLOYEE | YTD EMPLOYER |
|--|--|--|-----------------|--------------|--------------|
| GROSS | 4,583.34 | | CONTRIBUTION | CONTRIBUTION | CONTRIBUTION |
| PRETAX | 1,657.34 | VENDORS | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 2,926.00 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 203.06 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 46.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 42.43 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 181.41 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | ORG.KEY | PER.END | CHECK DATE |
|---|---|---|---|---|
| MATTHEW J BRUEHL | 00908891 | DDSF | 12/31/2018 | 12/21/2018 |

| RATE: 1,666.67 | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|
| RATE EFFECTIVE DATE: 09/10/2018 | | | | 0.00 |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | FED | S | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | NC | S | 00 | |
| RESIDENT TAX STATE: NC | | | | |
| WORK TAX STATE: NC | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|---|---|---|---|---|---|---|---|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 72.24 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 17.00 | TOTAL | 6.00 |
| | | HLTHREIM | 166.66 | MEDICARE | 14.94 | | |
| | | PARKING | 59.75 | OASDI | 63.91 | | |
| | | TOTAL | 635.91 | Total | 168.09 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|---|---|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|
| 1,666.67 | 635.91 | 0.00 | 1,030.76 | 168.09 | 6.00 | 856.67 |

YEAR TO DATE TOTALS                    RETIREMENT CONTRIBUTIONS

| | | VENDORS | CURRENT EMPLOYER CONTRIBUTION | YTD EMPLOYEE CONTRIBUTION | YTD EMPLOYER CONTRIBUTION |
|---|---|---|---|---|---|
| GROSS | 6,250.01 | | | | |
| PRETAX | 2,293.25 | | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 3,956.76 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 275.30 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 63.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 57.37 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 245.32 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | | DUKE UNIQUE ID | ORG.KEY | PER.END | CHECK DATE |
|---|---|---|---|---|---|
| MATTHEW J BRUEHL | | 00908891 | DDSF | 01/31/2019 | 01/25/2019 |

| | | | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|---|---|
| RATE: 1,666.67 | | | | | | 0.00 |
| RATE EFFECTIVE DATE: 09/10/2018 | | | FED | S | 00 | 0.00 |
| POSITION: ASSISTANT PROFESSOR – TRACK 4 | | | NC | S | 00 | |
| POSITION EFFECTIVE DATE: 09/10/2018 | | | | | | |
| RESIDENT TAX STATE: NC | | | | | | |
| WORK TAX STATE: NC | | | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|---|---|---|---|---|---|---|---|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 78.08 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.91 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 176.03 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|---|---|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 176.03 | 6.00 | 915.39 |

YEAR TO DATE TOTALS

RETIREMENT CONTRIBUTIONS

| GROSS | 1,666.67 | | | | |
|---|---|---|---|---|---|
| PRETAX | 569.25 | | CURRENT EMPLOYER | YTD EMPLOYEE | YTD EMPLOYER |
| TAX DEF | 0.00 | VENDORS | CONTRIBUTION | CONTRIBUTION | CONTRIBUTION |
| TAX GROSS | 1,097.42 | | | | |
| FED TAX | 78.08 | FIDELITY | 0.00 | 0.00 | 0.00 |
| NC TAX | 14.00 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| MEDICARE | 15.91 | VALIC | 0.00 | 0.00 | 0.00 |
| OASDI | 68.04 | VANGUARD | 0.00 | 0.00 | 0.00 |
| | | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | ORG.KEY | PER.END | CHECK DATE |
|------|----------------|---------|---------|------------|
| MATTHEW J BRUEHL | 00908891 | DDSF | 02/28/2019 | 02/25/2019 |

| RATE: 1,666.67 | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|
| RATE EFFECTIVE DATE: 09/10/2018 | | | | 0.00 |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | FED | S | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | NC | S | 00 | |
| RESIDENT TAX STATE: NC | | | | |
| WORK TAX STATE: NC | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|-----------|---|-----------|---|-------|---|-----------|---|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 78.08 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.92 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 176.04 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|-------------------|---------------------|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|-----------|--------|---------|---------------|-------|------------|---------|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 176.04 | 6.00 | 915.38 |

YEAR TO DATE TOTALS                    RETIREMENT CONTRIBUTIONS

| | | | CURRENT EMPLOYER | YTD EMPLOYEE | YTD EMPLOYER |
|---|---|---|---|---|---|
| GROSS | 3,333.34 | VENDORS | CONTRIBUTION | CONTRIBUTION | CONTRIBUTION |
| PRETAX | 1,138.50 | | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 2,194.84 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 156.16 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 28.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 31.83 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 136.08 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | | DUKE UNIQUE ID | | ORG.KEY | PER.END | CHECK DATE |
|------|--|----------------|--|---------|---------|------------|
| MATTHEW J BRUEHL | | 00908891 | | DDSF | 03/31/2019 | 03/25/2019 |

| RATE: 1,666.67 | | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|---|
| RATE EFFECTIVE DATE: 09/10/2018 | | | | | 0.00 |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | | FED | S | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | | NC | S | 00 | |
| RESIDENT TAX STATE: NC | | | | | |
| WORK TAX STATE: NC | | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|-----------|--|------------|--|-------|--|------------|--|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 78.08 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.91 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 176.03 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|-------------------|---------------------|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|-----------|--------|---------|---------------|-------|------------|---------|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 176.03 | 6.00 | 915.39 |

YEAR TO DATE TOTALS                    RETIREMENT CONTRIBUTIONS

| | | | CURRENT EMPLOYER | YTD EMPLOYEE | YTD EMPLOYER |
|---|---|---|------------------|--------------|--------------|
| GROSS | 5,000.01 | | CONTRIBUTION | CONTRIBUTION | CONTRIBUTION |
| PRETAX | 1,707.75 | VENDORS | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 3,292.26 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 234.24 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 42.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 47.74 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 204.12 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | ORG.KEY | PER.END | CHECK DATE |
|------|----------------|---------|---------|------------|
| MATTHEW J BRUEHL | 00908891 | DDSF | 04/30/2019 | 04/25/2019 |

| RATE: 1,666.67 RATE EFFECTIVE DATE: 09/10/2018 POSITION: ASSISTANT PROFESSOR - TRACK 4 POSITION EFFECTIVE DATE: 09/10/2018 RESIDENT TAX STATE: NC WORK TAX STATE: NC | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|
| | FED NC | S S | 00 00 | 0.00 0.00 |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|-----------|--|------------|--|-------|--|------------|--|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 78.08 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.91 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 176.03 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|-------------------|---------------------|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|-----------|--------|---------|---------------|-------|------------|---------|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 176.03 | 6.00 | 915.39 |

YEAR TO DATE TOTALS                              RETIREMENT CONTRIBUTIONS

| | | | CURRENT EMPLOYER | YTD EMPLOYEE | YTD EMPLOYER |
|---|---|---|---|---|---|
| GROSS | 6,666.68 | | CONTRIBUTION | CONTRIBUTION | CONTRIBUTION |
| PRETAX | 2,277.00 | VENDORS | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 4,389.68 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 312.32 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 56.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 63.65 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 272.16 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | ORG.KEY | PER.END | CHECK DATE |
|---|---|---|---|---|
| MATTHEW J BRUEHL | 00908891 | DDSF | 05/31/2019 | 05/24/2019 |

| | | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|---|
| RATE: | 1,666.67 | | | | |
| RATE EFFECTIVE DATE: | 09/10/2018 | | | | |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | | FED | M | 00 | 0.00 |
| POSITION EFFECTIVE DATE: | 09/10/2018 | NC | M | 00 | 0.00 |
| RESIDENT TAX STATE: NC | | | | | |
| WORK TAX STATE: NC | | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|---|---|---|---|---|---|---|---|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 11.41 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.91 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 109.36 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|---|---|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 109.36 | 6.00 | 982.06 |

YEAR TO DATE TOTALS                          RETIREMENT CONTRIBUTIONS

| | | | CURRENT EMPLOYER CONTRIBUTION | YTD EMPLOYEE CONTRIBUTION | YTD EMPLOYER CONTRIBUTION |
|---|---|---|---|---|---|
| GROSS | 8,333.35 | VENDORS | | | |
| PRETAX | 2,846.25 | | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 5,487.10 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 323.73 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 70.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 79.56 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 340.20 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | | ORG.KEY | PER.END | CHECK DATE |
|---|---|---|---|---|---|
| MATTHEW J BRUEHL | 00908891 | | DDSF | 06/30/2019 | 06/25/2019 |

| | | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|---|
| RATE: 1,666.67 | | | | | |
| RATE EFFECTIVE DATE: 09/10/2018 | | FED | M | 00 | 0.00 |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | | NC | M | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | | | | | |
| RESIDENT TAX STATE: NC | | | | | |
| WORK TAX STATE: NC | | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|---|---|---|---|---|---|---|---|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 11.41 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.92 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 109.37 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|---|---|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 109.37 | 6.00 | 982.05 |

YEAR TO DATE TOTALS

RETIREMENT CONTRIBUTIONS

| GROSS | 10,000.02 | | CURRENT EMPLOYER | YTD EMPLOYEE | YTD EMPLOYER |
|---|---|---|---|---|---|
| PRETAX | 3,415.50 | VENDORS | CONTRIBUTION | CONTRIBUTION | CONTRIBUTION |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 6,584.52 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 335.14 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 84.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 95.48 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 408.24 | TOTAL | 0.00 | 0.00 | 0.00 |

DUKE UNIVERSITY/HEALTH SYSTEM
MONTHLY PAYROLL STATEMENT

| NAME | DUKE UNIQUE ID | | ORG.KEY | PER.END | CHECK DATE |
|---|---|---|---|---|---|
| MATTHEW J BRUEHL | 00908891 | | DDSF | 07/31/2019 | 07/25/2019 |

| | | | M/S | EXEMPTION | ADD'L AMTS |
|---|---|---|---|---|---|
| RATE: 1,666.67 | | | | | |
| RATE EFFECTIVE DATE: 09/10/2018 | | FED | M | 00 | 0.00 |
| POSITION: ASSISTANT PROFESSOR - TRACK 4 | | NC | M | 00 | 0.00 |
| POSITION EFFECTIVE DATE: 09/10/2018 | | | | | |
| RESIDENT TAX STATE: NC | | | | | |
| WORK TAX STATE: NC | | | | | |

| GROSS PAY | | PRETAX DED | | TAXES | | DEDUCTIONS | |
|---|---|---|---|---|---|---|---|
| SALARY | 1,666.67 | SELECT | 391.00 | FED | 11.41 | PAI | 6.00 |
| TOTAL | 1,666.67 | VISION | 18.50 | NC | 14.00 | TOTAL | 6.00 |
| | | HLTHREIM | 100.00 | MEDICARE | 15.91 | | |
| | | PARKING | 59.75 | OASDI | 68.04 | | |
| | | TOTAL | 569.25 | Total | 109.36 | | |

| TAX DEFERRED DEDS | POST TAX RETIREMENT |
|---|---|
| | |

| GROSS PAY | PRETAX | TAX DEF | TAXABLE GROSS | TAXES | DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|
| 1,666.67 | 569.25 | 0.00 | 1,097.42 | 109.36 | 6.00 | 982.06 |

YEAR TO DATE TOTALS                                    RETIREMENT CONTRIBUTIONS

| | | VENDORS | CURRENT EMPLOYER CONTRIBUTION | YTD EMPLOYEE CONTRIBUTION | YTD EMPLOYER CONTRIBUTION |
|---|---|---|---|---|---|
| GROSS | 11,666.69 | | | | |
| PRETAX | 3,984.75 | | | | |
| TAX DEF | 0.00 | | | | |
| TAX GROSS | 7,681.94 | FIDELITY | 0.00 | 0.00 | 0.00 |
| FED TAX | 346.55 | TIAA/CREF | 0.00 | 0.00 | 0.00 |
| NC TAX | 98.00 | VALIC | 0.00 | 0.00 | 0.00 |
| MEDICARE | 111.39 | VANGUARD | 0.00 | 0.00 | 0.00 |
| OASDI | 476.28 | TOTAL | 0.00 | 0.00 | 0.00 |

# EXHIBIT  F

Earnings Statements from PDC (Set monthly payment of $11,666.67 and deductions for benefits)

## Private Diagnostic Clinic, PLLC
DUMC 3810, DURHAM, NC 27710

### Earnings Statement
### DD0000182051

| Distributions | | |
|---|---|---|
| Code | Rate | Amount |
| MONTHL | $8,750.00 | $8,750.00 |
| SPECIA | $5,000.00 | $5,000.00 |
| | Totals: | $13,750.00 |

| Pay Date | |
|---|---|
| 9/25/2018 | |
| Net Distributions | $12,124.82 |
| YTD Net Distributions | $12,124.82 |
| YTD Gross Distributions | $13,750.00 |

| Deductions | | |
|---|---|---|
| Desc | Amount | Year To Date |
| Profit Sharing | $1,543.92 | $1,543.92 |
| Profit Share Esc **DO NOT USE* | $81.26 | $81.26 |
| Totals: | $1,625.18 | $1,625.18 |

| Benefits | | |
|---|---|---|
| Desc | Amount | Year To Date |
| Family Dental | $121.00 | $121.00 |
| Long Term Disability | $142.67 | $142.67 |
| Short Term Disability | $52.50 | $52.50 |
| Family Life $ 1MM | $142.23 | $142.23 |
| Totals: | $458.40 | $458.40 |

| Direct Deposit Information | | |
|---|---|---|
| Bank | Account | Amount |
| 253177049 | ******4649 | $12,124.82 |

| Miscellaneous | |
|---|---|
| Employee ID: | BRUMAT021100 |

Matthew Bruehl
420 Panorama Park Place
Cary NC  27519

## Private Diagnostic Clinic, PLLC

DUMC 3810, DURHAM, NC 27710

### Earnings Statement

### DD0000183907

| Distributions | | |
|---|---|---|
| **Code** | **Rate** | **Amount** |
| MONTHL | $11,666.67 | $11,666.67 |
| | | |
| Totals: | | $11,666.67 |

| Pay Date | |
|---|---|
| 10/25/2018 | |
| Net Distributions | $10,279.78 |
| YTD Net Distributions | $22,404.60 |
| YTD Gross Distributions | $25,416.67 |

| Deductions | | |
|---|---|---|
| **Desc** | **Amount** | **Year To Date** |
| Profit Sharing | $1,317.55 | $2,861.47 |
| Profit Share Esc **DO NOT USE* | $69.34 | $150.60 |
| Totals: | $1,386.89 | $3,012.07 |

| Benefits | | |
|---|---|---|
| **Desc** | **Amount** | **Year To Date** |
| Family Dental | $121.00 | $242.00 |
| LifeLock | $5.99 | $5.99 |
| Long Term Disability | $142.67 | $285.34 |
| Short Term Disability | $52.50 | $105.00 |
| Family Life $ 1MM | $142.23 | $284.46 |
| Totals: | $464.39 | $922.79 |

| Direct Deposit Information | | |
|---|---|---|
| **Bank** | **Account** | **Amount** |
| 253177049 | ******4649 | $10,279.78 |

| Miscellaneous | |
|---|---|
| Employee ID: | BRUMAT021100 |
| | |
| | |
| | |

Matthew Bruehl
420 Panorama Park Place
Cary NC 27519

## Private Diagnostic Clinic, PLLC
DUMC 3810, DURHAM, NC 27710

### Earnings Statement
### DD0000185922

### Distributions

| Code | Rate | Amount |
|------|------|--------|
| MONTHL | $11,666.67 | $11,666.67 |
|  |  |  |
| Totals: |  | $11,666.67 |

| Pay Date | |
|---|---|
| 11/21/2018 | |
| Net Distributions | $10,279.78 |
| YTD Net Distributions | $32,684.38 |
| YTD Gross Distributions | $37,083.34 |

### Deductions

| Desc | Amount | Year To Date |
|------|--------|--------------|
| Profit Sharing | $1,317.55 | $4,179.02 |
| Profit Share Esc **DO NOT USE* | $69.34 | $219.94 |
| Totals: | $1,386.89 | $4,398.96 |

### Benefits

| Desc | Amount | Year To Date |
|------|--------|--------------|
| Family Dental | $121.00 | $363.00 |
| LifeLock | $5.99 | $11.98 |
| Long Term Disability | $142.67 | $428.01 |
| Short Term Disability | $52.50 | $157.50 |
| Family Life $ 1MM | $142.23 | $426.69 |
| Totals: | $464.39 | $1,387.18 |

### Direct Deposit Information

| Bank | Account | Amount |
|------|---------|--------|
| 253177049 | ******4649 | $10,279.78 |

### Miscellaneous

| Employee ID: | BRUMAT021100 |
|---|---|

Matthew Bruehl
420 Panorama Park Place
Cary NC  27519

## Private Diagnostic Clinic, PLLC

DUMC 3810, DURHAM, NC 27710

### Earnings Statement

### DD0000187810

| Distributions | | | | Pay Date | |
|---|---|---|---|---|---|
| Code | Rate | Amount | | 12/21/2018 | |
| MONTHL | $11,666.67 | $11,666.67 | Net Distributions | | $10,279.79 |
| | | | YTD Net Distributions | | $42,964.17 |
| | | | YTD Gross Distributions | | $48,750.01 |
| Totals: | | $11,666.67 | | | |

| Deductions | | | Benefits | | |
|---|---|---|---|---|---|
| Desc | Amount | Year To Date | Desc | Amount | Year To Date |
| Profit Sharing | $1,317.54 | $5,496.56 | Family Dental | $121.00 | $484.00 |
| Profit Share Esc **DO NOT USE* | $69.34 | $289.28 | LifeLock | $5.99 | $17.97 |
| | | | Long Term Disability | $142.67 | $570.68 |
| | | | Short Term Disability | $52.50 | $210.00 |
| | | | Family Life $ 1MM | $142.23 | $568.92 |
| Totals: | $1,386.88 | $5,785.84 | Totals: | $464.39 | $1,851.57 |

| Direct Deposit Information | | | Miscellaneous | |
|---|---|---|---|---|
| Bank | Account | Amount | Employee ID: | BRUMAT021100 |
| 253177049 | ******4649 | $10,279.79 | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC 27519

## Private Diagnostic Clinic, PLLC

DUMC 3810, DURHAM, NC 27710

### Earnings Statement

### DD0000189800

| Distributions | | | Pay Date | |
|---|---|---|---|---|
| **Code** | **Rate** | **Amount** | 1/25/2019 | |
| MONTHL | $11,666.67 | $11,666.67 | Net Distributions | $10,270.21 |
| | | | YTD Net Distributions | $10,270.21 |
| | | | YTD Gross Distributions | $11,666.67 |
| | Totals: | $11,666.67 | | |

| Deductions | | | Benefits | | |
|---|---|---|---|---|---|
| **Desc** | **Amount** | **Year To Date** | **Desc** | **Amount** | **Year To Date** |
| Profit Sharing | $1,326.64 | $1,326.64 | Family Dental | $121.00 | $121.00 |
| Profit Share Esc **DO NOT USE* | $69.82 | $69.82 | LifeLock | $5.99 | $5.99 |
| | | | Long Term Disability | $142.67 | $142.67 |
| | | | Short Term Disability | $58.33 | $58.33 |
| | | | Family Life $ 1MM | $142.23 | $142.23 |
| Totals: | $1,396.46 | $1,396.46 | Totals: | $470.22 | $470.22 |

| Direct Deposit Information | | | Miscellaneous | |
|---|---|---|---|---|
| **Bank** | **Account** | **Amount** | Employee ID: | BRUMAT021100 |
| 253177049 | ******4649 | $10,270.21 | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC  27519

| **Private Diagnostic Clinic, PLLC**<br>DUMC 3810, DURHAM, NC 27710 | **Earnings Statement**<br>**DD0000191903** |
|---|---|

| **Distributions** | | | **Pay Date** | |
|---|---|---|---|---|

| Code | Rate | Amount | | |
|---|---|---|---|---|
| | | | 2/25/2019 | |
| MONTHL | $11,666.67 | $11,666.67 | Net Distributions | $10,271.55 |
| | | | YTD Net Distributions | $20,541.76 |
| | | | YTD Gross Distributions | $23,333.34 |
| | Totals: | $11,666.67 | | |

| **Deductions** | | | **Benefits** | | |
|---|---|---|---|---|---|
| Desc | Amount | Year To Date | Desc | Amount | Year To Date |
| Profit Sharing | $1,325.36 | $2,652.00 | Family Dental | $121.00 | $242.00 |
| Profit Share Esc **DO NOT USE* | $69.76 | $139.58 | LifeLock | $5.99 | $11.98 |
| | | | Long Term Disability | $142.67 | $285.34 |
| | | | Short Term Disability | $52.50 | $105.00 |
| | | | Family Life $ 1MM | $142.23 | $284.46 |
| Totals: | $1,395.12 | $2,791.58 | Totals: | $464.39 | $928.78 |

| **Direct Deposit Information** | | | **Miscellaneous** | |
|---|---|---|---|---|
| Bank | Account | Amount | Employee ID: | BRUMAT021100 |
| 253177049 | ******4649 | $10,271.55 | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC 27519

| Private Diagnostic Clinic, PLLC | Earnings Statement |
|---|---|
| DUMC 3810, DURHAM, NC 27710 | DD0000193762 |

## Distributions

| | | | | Pay Date | |
|---|---|---|---|---|---|
| | | | | 3/25/2019 | |

| Code | Rate | Amount | | | |
|---|---|---|---|---|---|
| MONTHL | $11,666.67 | $11,666.67 | Net Distributions | | $10,270.88 |
| | | | YTD Net Distributions | | $30,812.64 |
| | | | YTD Gross Distributions | | $35,000.01 |
| | Totals: | $11,666.67 | | | |

## Deductions / Benefits

| Desc | Amount | Year To Date | Desc | Amount | Year To Date |
|---|---|---|---|---|---|
| Profit Sharing | $1,326.00 | $3,978.00 | Family Dental | $121.00 | $363.00 |
| Profit Share Esc **DO NOT USE* | $69.79 | $209.37 | LifeLock | $5.99 | $17.97 |
| | | | Long Term Disability | $142.67 | $428.01 |
| | | | Short Term Disability | $52.50 | $157.50 |
| | | | Family Life $ 1MM | $142.23 | $426.69 |
| Totals: | $1,395.79 | $4,187.37 | Totals: | $464.39 | $1,393.17 |

## Direct Deposit Information / Miscellaneous

| Bank | Account | Amount | Employee ID: | BRUMAT021100 |
|---|---|---|---|---|
| 253177049 | ******4649 | $10,270.88 | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC  27519

## Private Diagnostic Clinic, PLLC
DUMC 3810, DURHAM, NC 27710

### Earnings Statement
### DD0000195658

| Distributions | | | Pay Date | |
|---|---|---|---|---|
| **Code** | **Rate** | **Amount** | 4/25/2019 | |
| MONTHL | $11,666.67 | $11,666.67 | Net Distributions | $10,270.88 |
| | | | YTD Net Distributions | $41,083.52 |
| | | | YTD Gross Distributions | $46,666.68 |
| | Totals: | $11,666.67 | | |

| Deductions | | | Benefits | | |
|---|---|---|---|---|---|
| **Desc** | **Amount** | **Year To Date** | **Desc** | **Amount** | **Year To Date** |
| Profit Sharing | $1,326.00 | $5,304.00 | Family Dental | $121.00 | $484.00 |
| Profit Share Esc **DO NOT USE* | $69.79 | $279.16 | LifeLock | $5.99 | $23.96 |
| | | | Long Term Disability | $142.67 | $570.68 |
| | | | Short Term Disability | $52.50 | $210.00 |
| | | | Family Life $ 1MM | $142.23 | $568.92 |
| Totals: | $1,395.79 | $5,583.16 | Totals: | $464.39 | $1,857.56 |

| Direct Deposit Information | | | Miscellaneous | |
|---|---|---|---|---|
| **Bank** | **Account** | **Amount** | Employee ID: | BRUMAT021100 |
| 253177049 | ******4649 | $10,270.88 | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC 27519

| **Private Diagnostic Clinic, PLLC** | **Earnings Statement** |
|---|---|
| DUMC 3810, DURHAM, NC 27710 | **DD0000197690** |

## Distributions

| | | | | Pay Date | |
|---|---|---|---|---|---|
| | | | | 5/24/2019 | |

| Code | Rate | Amount | | | |
|---|---|---|---|---|---|
| MONTHL | $11,666.67 | $11,666.67 | Net Distributions | | $10,270.87 |
| | | | YTD Net Distributions | | $51,354.39 |
| | | | YTD Gross Distributions | | $58,333.35 |
| | Totals: | $11,666.67 | | | |

## Deductions / Benefits

| **Deductions** | | | **Benefits** | | |
|---|---|---|---|---|---|
| Desc | Amount | Year To Date | Desc | Amount | Year To Date |
| Profit Sharing | $1,326.01 | $6,630.01 | Family Dental | $121.00 | $605.00 |
| Profit Share Esc **DO NOT USE* | $69.79 | $348.95 | LifeLock | $5.99 | $29.95 |
| | | | Long Term Disability | $142.67 | $713.35 |
| | | | Short Term Disability | $52.50 | $262.50 |
| | | | Family Life $ 1MM | $142.23 | $711.15 |
| Totals: | $1,395.80 | $6,978.96 | Totals: | $464.39 | $2,321.95 |

## Direct Deposit Information / Miscellaneous

| **Direct Deposit Information** | | | **Miscellaneous** | |
|---|---|---|---|---|
| Bank | Account | Amount | Employee ID: | BRUMAT021100 |
| 253177049 | ******4649 | $10,270.87 | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC  27519

## Private Diagnostic Clinic, PLLC
DUMC 3810, DURHAM, NC 27710

### Earnings Statement
### DD0000199583

| Distributions | | | | Pay Date | |
|---|---|---|---|---|---|
| **Code** | **Rate** | **Amount** | | 6/25/2019 | |
| MONTHL | $11,666.67 | $11,666.67 | Net Distributions | | $10,270.88 |
| | | | YTD Net Distributions | | $61,625.27 |
| | | | YTD Gross Distributions | | $70,000.02 |
| | Totals: | $11,666.67 | | | |

| Deductions | | | Benefits | | |
|---|---|---|---|---|---|
| **Desc** | **Amount** | **Year To Date** | **Desc** | **Amount** | **Year To Date** |
| Profit Sharing | $1,326.00 | $7,956.01 | Family Dental | $121.00 | $726.00 |
| Profit Share Esc **DO NOT USE* | $69.79 | $418.74 | LifeLock | $5.99 | $35.94 |
| | | | Long Term Disability | $142.67 | $856.02 |
| | | | Short Term Disability | $52.50 | $315.00 |
| | | | Family Life $ 1MM | $142.23 | $853.38 |
| Totals: | $1,395.79 | $8,374.75 | Totals: | $464.39 | $2,786.34 |

| Direct Deposit Information | | | Miscellaneous | |
|---|---|---|---|---|
| **Bank** | **Account** | **Amount** | Employee ID: | BRUMAT021100 |
| 253177049 | ******4649 | $10,270.88 | | |
| | | | | |
| | | | | |
| | | | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC  27519

## Private Diagnostic Clinic, PLLC
DUMC 3810, DURHAM, NC 27710

### Earnings Statement
### DD0000201504

| Distributions | | | Pay Date | |
|---|---|---|---|---|
| **Code** | **Rate** | **Amount** | 7/25/2019 | |
| MONTHL | $1,108.52 | $1,108.52 | Net Distributions | $928.14 |
| | | | YTD Net Distributions | $62,553.41 |
| | | | YTD Gross Distributions | $71,108.54 |
| | Totals: | $1,108.52 | | |

| Deductions | | | Benefits | | |
|---|---|---|---|---|---|
| **Desc** | **Amount** | **Year To Date** | **Desc** | **Amount** | **Year To Date** |
| Profit Sharing | $171.36 | $8,127.37 | Family Dental | $121.00 | $847.00 |
| Profit Share Esc **DO NOT USE* | $9.02 | $427.76 | LifeLock | $5.99 | $41.93 |
| | | | Long Term Disability | $142.67 | $998.69 |
| | | | Short Term Disability | $52.50 | $367.50 |
| | | | Family Life $ 1MM | $142.23 | $995.61 |
| Totals: | $180.38 | $8,555.13 | Totals: | $464.39 | $3,250.73 |

| Direct Deposit Information | | | Miscellaneous | |
|---|---|---|---|---|
| **Bank** | **Account** | **Amount** | Employee ID: | BRUMAT021100 |
| 253177049 | ******4649 | $928.14 | | |

Matthew Bruehl
420 Panorama Park Place
Cary NC 27519

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| MATTHEW BRUEHL, M.D., | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No. 1:21-cv-00590 |
| School of Medicine, Duke University Medical Center, an | ) |
| _Defendant_ | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To:   Valerie Bateman/Rachel Blunk

     _(Name of the plaintiff's attorney or unrepresented plaintiff)_

     I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

     I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

     I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

     I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

| | |
|---|---|
| | _Signature of the attorney or unrepresented party_ |
| Duke University Health System Inc. | Michael B. Cohen |
| _Printed name of party waiving service of summons_ | _Printed name_ |
| | Ogletree Deakins |
| | 8529 Six Forks Rd, Forum IV, Suite 600 |
| | Raleigh, NC 27615 |
| | _Address_ |
| | michael.cohen@ogletree.com |
| | _E-mail address_ |
| | (919) 233-4693 |
| | _Telephone number_ |

### Duty to Avoid Unnecessary Expenses of Serving a Summons

     Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

     "Good cause" does _not_ include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

     If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

     If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.