IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:21-CV-00590

| | |
|---|---|
| MATTHEW BRUEHL, M.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUKE UNIVERSITY, DUKE )<br>UNIVERSITY SCHOOL OF )<br>MEDICINE, DUKE UNIVERSITY )<br>HEALTH SYSTEM, INC., and )<br>PRIVATE DIAGNOSTIC CLINIC, )<br>PLLC, )<br>)<br>Defendants. )<br>) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DUKE UNIVERSITY, DUKE UNIVERSITY SCHOOL OF MEDICINE, AND DUKE UNIVERSITY HEALTH SYSTEM, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Defendants Duke University ("Duke"), Duke University School of Medicine ("DUSM"), and Duke University Health System, Inc. ("DUHS") (collectively the "Duke Defendants"), by and through counsel, and pursuant to Rules 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss for lack of personal jurisdiction, insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted.

## NATURE OF THE CASE

Plaintiff Matthew Bruehl, M.D. ("Plaintiff") filed this action against Duke, DUSM, Duke University Medical Center ("DUMC"), and Private Diagnostic Clinic, PLLC ("Defendant PDC") on July 19, 2021. (D.E. 1). On August 16, 2021, Plaintiff filed an

Amended Complaint as a matter of course pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, in pertinent part substituting DUMC for DUHS as a party to the action. (D.E. 8).

On October 5, 2021, Plaintiff voluntarily dismissed his claim under the Fair Labor Standards Act pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. (D.E. 12).

On November 17, 2021, Plaintiff filed his Motion to Amend the First Amended Complaint. (D.E. 14). The Duke Defendants and Defendant PDC consented to Plaintiff's Motion to Amend while highlighting a number of misrepresentations advanced in Plaintiff's filing. (D.E. 29; D.E. 32). The Court granted Plaintiff's Motion to Amend on January 7, 2022. (January 7, 2022 Text Order). Plaintiff's Second Amended Complaint was filed the same day. (D.E. 36).

Plaintiff advances two claims in his Second Amended Complaint, purportedly on his own behalf and on behalf of similarly situated employees as a class action: (1) willful violations of 26 U.S.C. § 7434 ("Section 7434"); and (2) unlawful deductions under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.8. (D.E. 36 ¶¶ 107-121). For the reasons stated herein, the Duke Defendants request that the Court dismiss Plaintiff's claims against them.

# STATEMENT OF RELEVANT FACTS

## I. ALLEGATIONS IN PLAINTIFF'S SECOND AMENDED COMPLAINT.[1]

On May 22, 2018, Duke offered Plaintiff, a licensed physician, a faculty position within DUSM's Department of Pediatrics. (D.E. 36 ¶¶ 15-17; D.E. 36-1). Plaintiff was advised that his appointment would be as an Assistant Professor, Track IV (Clinician-Teacher), and that he would need to be a member with Defendant PDC, Duke's faculty practice plan, for purposes of his corresponding clinical activities. (D.E. 36 ¶¶ 18, 20-21, 31; D.E. 36-1). Plaintiff was required to sign Defendant PDC's Operating Agreement to become its member. (D.E. 36 ¶ 25; D.E. 36-1).

On or about September 6, 2018, Plaintiff attended Defendant PDC's New Member Orientation Program conducted by Defendant PDC's Benefits Representative. (D.E. 36 ¶ 26; D.E. 36-2). Plaintiff was correspondingly provided a number of documents, including a member addendum, a professional liability insurance letter, Defendant PDC's Operating Agreement and, among other materials, documents pertaining to his employment as a Duke faculty member. (D.E. 36 ¶ 28-30; D.E. 36-2).

Plaintiff's employment formally began on September 10, 2018. (D.E. 36 ¶ 34).[2]

---

[1] The allegations stated herein are provided for purposes of the Duke Defendants' request for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure only. Facts concerning the DUSM's and DUHS' request for dismissal under Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure are provided *infra*.

[2] Insofar as Plaintiff broadly provides that he was employed by all Defendants, such allegation is conclusory (as it relates to Defendant PDC, which Plaintiff asserts was his joint employer) and need not be accepted as true. *Jefferson v. Sch. Bd. of City of Norfolk*, 452 F. App'x 356, 357 (4th Cir. 2011).

That day, Plaintiff signed an addendum to Defendant PDC's Operating Agreement, whereby he "accept[ed] all of the provisions and conditions thereof and agree[d] to be bound by such provisions and conditions as a member of [Defendant PDC]." (D.E. 36 ¶¶ 35-36; D.E. 36-3). The addendum referenced that Plaintiff was a member of Duke's faculty. (*Id.*). As described in Defendant PDC's Operating Agreement, Defendant PDC, founded in 1931, offers its members the ability to "engage in the private practice of medicine for private gain, while retaining their academic relationship with Duke," and while Defendant PDC practices medicine primarily at Duke, it is not so limited and may practice in other communities. (D.E. 36-4 ¶¶ 1.3, 2.1, 2.2). Defendant PDC also maintains operating procedures and structures wholly distinct from Duke. (D.E. 36-4).

After he began his employment, the Duke Defendants paid Plaintiff a regular fixed monthly wage from which ordinary payroll deductions, such as taxes and benefits, were made. (D.E. 36 ¶ 42; D.E. 36-5). Plaintiff also earned distributions from Defendant PDC related to his clinical work,[3] including regular monthly earnings and other periodic earnings, from which only profit sharing deductions were made. (D.E. 36 ¶¶ 43-44; D.E. 36-6).[4] Defendant PDC filed a Schedule K-1 (Form 1065) (hereinafter "Schedule K-1") in 2018 and 2019 to identify Plaintiff's earnings from the partnership. (D.E. 36-7). The

---

[3] To the extent Plaintiff alleges that he was employed by Defendant PDC, such allegation is conclusory and need not be accepted as true. *See supra* FN 2.

[4] Plaintiff alleges in his Second Amended Complaint that the cost of benefits were deducted from his distributions from Defendant PDC, but the earnings statements submitted by Plaintiff make clear that this is not accurate. Though the value of Plaintiff's benefits from Defendant PDC are listed in his earnings statements, these amounts were not deducted from Plaintiff's distributions. (*Compare* D.E. 36 ¶ 43 *with* D.E. 36-6).

4

Schedule K-1s affirmatively refer to Plaintiff as a partner in Defendant PDC. (*Id.*).

On July 31, 2019, Plaintiff's employment was terminated. (D.E. 36 ¶ 85). Plaintiff asserts that Defendant PDC thereafter withheld $10,558.15 from his earnings without notice or authorization. (*Id.* ¶¶ 87, 90, 99).[5]

## II. FACTS REGARDING SERVICE UPON DUSM AND DUHS.[6]

On August 2, 2021, Duke agreed to waive the service of summons. (D.E. 16-1 at 2). Plaintiff's counsel was correspondingly advised, however, that service could not be waived as to DUSM, as DUSM "do[es] not legally exist and [is] not capable of suing or being sued under federal or state law." (*Id.* at 1).[7] Plaintiff's counsel was also advised (and acknowledged) that DUHS never waived service. (D.E. 18-3 at 4-5). To date, neither DUSM nor DUHS has been served pursuant to Rule 4 of the Federal Rules of Civil Procedure.

### QUESTIONS PRESENTED

1. Whether Plaintiff's Section 7434 claim should be dismissed as to the Duke Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure?

2. Whether Plaintiff's NCWHA claim should be dismissed as to the Duke Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure?

---

[5] Plaintiff does not allege that the Duke Defendants withheld any portion of Plaintiff's salary; only Defendant PDC is implicated in Plaintiff's deduction-related allegation.

[6] The facts stated herein are provided for purposes of DUSM's and DUHS' request for dismissal under Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure only.

[7] The same information was provided to Plaintiff's counsel with respect to former defendant DUMC, which Plaintiff thereafter removed as a party to this action. (*Id.*).

3. Whether DUSM and DUHS should be dismissed from this action pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure?

## ARGUMENT

I. STANDARD OF REVIEW.

A. Rule 12(b)(2).

Rule 12(b)(2) of the Federal Rules of Civil Procedure "provides for dismissal where the court lacks personal jurisdiction over a particular named defendant." *Protocol, LLC v. Henderson*, 18 F. Supp. 3d 689, 694 (M.D.N.C. 2014). "The court lacks personal jurisdiction over a defendant that has not been served properly." *Hammonds v. Dep't of Transportation of Div. of Motor Vehicles*, 2019 WL 5957178, at *1 (E.D.N.C. Nov. 12, 2019) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)). When a defendant properly challenges the court's personal jurisdiction through a Rule 12(b)(2) motion, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

B. Rules 12(b)(4) and 12(b)(5).

"A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(4) challenges the sufficiency of process, while Rule 12(b)(5) motions challenge the sufficiency of service of process." *Richardson v. Roberts*, 355 F. Supp. 3d 367, 370 (E.D.N.C. 2019). The plaintiff bears the burden of establishing proper service. *Dalenko v. Stephens*, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013); *see also Mylan Labs., Inc. v. Akzo,*

*N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (holding that the plaintiff must prove service of process if challenged).

### C. Rule 12(b)(6).

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *DeSole v. United States*, 947 F.2d 1169, 1178 (4th Cir. 1991). The question on a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted. *Scheur v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). If it appears that a plaintiff is not entitled to relief under the stated facts, dismissal is proper. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991).

While a court ruling on a motion under Rule 12(b)(6) must accept all well-pleaded factual allegations as true, and must construe the facts in the light most favorable to the plaintiff, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, as stated by the Supreme Court, a well-pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Moreover, a court reviewing a motion under Rule 12(b)(6) is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Jefferson*, 452 F. App'x at 357 (citing *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).

## II. PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Plaintiff's Section 7434 Claim Fails as a Matter of Law.

Under Section 7434, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). Though the Fourth Circuit has not yet issued an opinion interpreting Section 7434, precedent from district courts from within this Circuit, as well as courts from outside this Circuit, makes clear that Plaintiff's Section 7434 claim fails as a matter of law.

#### 1. Plaintiff's Section 7434 Claim is Premised Upon the Alleged Use of a Wrong Form, Not a Misrepresentation of Amounts Paid to Plaintiff, Compelling Dismissal.

In *Liverett v. Torres Advanced Enter. Sols. LLC*, the Eastern District of Virginia undertook a thorough analysis of the conduct prohibited under Section 7434. 192 F. Supp. 3d 648 (E.D. Va. 2016). In *Liverett*, the plaintiff alleged that the defendant misclassified him and other workers as independent contractors and, correspondingly, violated Section 7434 by issuing the workers Form 1099s instead of Form W-2s. *Id.* at 649-50. The plaintiff did not allege that the tax forms reflected an inaccurate amount of payments made, but instead, that the workers' statuses were misrepresented as contractors and they were issued the incorrect tax forms. *Id.* at 650. The defendant moved to dismiss for failure to state a claim. *Id.* at 649. The *Liverett* court began by analyzing the phrase "with respect to" in the statutory text to determine whether it serves to modify "payments purported to be made to any other person," which would render the statute actionable only if the tax form utilized

is incorrect as to amounts actually paid, or whether it serves to modify "information return," which would render the statute actionable if the tax form utilized is false in any respect. *Id.* at 650. "[T]he question presented is whether [Section 7434] creates a private cause of action where, as here, the alleged misrepresentation is the filing of the wrong *type* of information return rather than a misrepresentation as to the amount of the payments made." *Id.* (emphasis in original). After engaging in a detailed statutory interpretation exercise, as well as looking to Section 7434's legislative history and purpose, the *Liverett* court ultimately concluded that the statutory language "point[s] conclusively to the understanding that [Section 7434] creates a private cause of action only where an information return is fraudulent with respect to the *amount* purportedly paid to the plaintiff," and "Congress's goal in enacting [Section 7434] was to give redress to taxpayers aggrieved by the filing of information returns that fraudulently misrepresent the *amount* paid to the taxpayer." *Id.* at 653-55 (emphasis added).

Since the *Liverett* opinion was issued, courts nationwide – including those within the Fourth Circuit – have reached similar conclusions and made clear that Section 7434 only governs misrepresentations regarding amounts paid, not tax forms used. *See, e.g., Sirin v. Portx, Inc.*, 2020 WL 6194018, at \*6 (D.N.J. Oct. 22, 2020) ("The fraud targeted by the Section 7434(a), by its terms, pertains to the amount purportedly paid, not the plaintiff's employment status."); *Gregoire v. Citizens Bank, N/A*, 2020 WL 4743085, at \*3 (D. Vt. July 6, 2020), *aff'd*, 2021 WL 4127076 (2d Cir. Sept. 10, 2021) ("Although Plaintiffs allege Defendants 'fraudulently filed . . . required tax information,' they fail to

9

allege Defendants maliciously reported a false payment. . . . Accordingly, Plaintiffs have failed to state a claim under [Section] 7434"); *Wagner v. Econ. Rent-A-Car Corp.*, 2020 WL 1033593, at *4 (D. Md. Mar. 3, 2020) ("Plaintiff's claims do not fall within the ambit of [Section] 7434 because he has not sufficiently alleged that the amounts reported in his tax forms inaccurately recorded the amounts paid to him."); *Pacheco v. Chickpea at 14th St. Inc.*, 2019 WL 2292641, at *2 (S.D.N.Y. May 30, 2019) (providing that Section 7434 "creates a private cause of action only where an information return is fraudulent with respect to the amount purportedly paid to the plaintiff.") (quotations omitted); *Nguyen v. Luong*, 2019 WL 2191341, at *3 (N.D. Cal. May 20, 2019) ("[A] claim under [Section] 7434(a) is actionable only if the 'information return' at issue is false with respect to the amount paid to the plaintiff."); *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 885 (C.D. Ill. 2017) (providing that Section 7434 liability requires a misstatement of the amounts paid); *Tran v. Tran*, 239 F.Supp.3d 1296, 1298 (M.D. Fla. 2017) ("Whether innocent or deliberate, the payor's filing of the wrong form establishes no liability under Section 7434 unless the form willfully misstates the payee's income.").

In this action, Plaintiff alleges in his Second Amended Complaint that a portion of his earnings were reported "in the form of K[-]1s instead of W[-]2s," which was allegedly done so that Defendants "would not have to pay the employer portion of FICA, FUTA, and other federal and state come [*sic*] taxes, even though the Plaintiff and other similarly situated employees of Defendants were W-2 employees." (D.E. 36 ¶¶ 8-9). Plaintiff further alleges that Defendants "intentionally issued Plaintiff, and similarly situated

10

employees' [*sic*], wage payments from the PDC for clinical and academic teaching services as K-1 pay, without any federal or state deductions or withholdings, and failed to report such earning[s] on Plaintiffs' W-2s." (*Id.* ¶ 109). Though Plaintiff's allegations are at times vague and unclear, including occasional references to "underreporting wages," it is evident, both from the context in the Second Amended Complaint and from the exhibits submitted therewith (including the agreement reached by Plaintiff, Plaintiff's payroll and earnings statements, and the Schedule K-1 issued by Defendant PDC), that Plaintiff advances his claim under Section 7434 based upon the allegation that no portion of his payments should have been issued on a Form K-1 and, instead, all of his payments should have been issued on a Form W-2. That is, Plaintiff's claim is not based on an alleged misrepresentation of the *amounts* paid to him, but, instead, on an alleged use of the incorrect *forms*, since he was allegedly an employee of Defendant PDC. Since authority on this issue makes clear that Section 7434 only provides a cause of action when the amount of the payments made is misrepresented (rather than the type of information return used), Plaintiff's Section 7434 claim fails as a matter of law.

### 2. Plaintiff Cannot Maintain an Action Against the Duke Defendants for Payments Made by a Separate Entity.

Though Plaintiff broadly alleges that the Duke Defendants and Defendant PDC were joint employers throughout his Second Amended Complaint, the Duke Defendants are aware of no authority supporting the proposition that joint employment liability does or even may exist for purposes of a Section 7434 claim. To the contrary, the text of Section 7434 expressly limits civil liability to "the person so filing such return." 26 U.S.C. §

11

7434(a). The Duke Defendants did not file the Schedule K-1s at issue. (D.E. 36-7). The Duke Defendants also did not pay Plaintiff the amounts represented on the Schedule K-1s. The Duke Defendants cannot be liable for payments that they did not make.[8]

Assuming *arguendo* that the Duke Defendants can somehow be liable for payments that they did not make, Schedule K-1s are not even covered under Section 7434. Section 7434 governs the filing of fraudulent "information return[s]" only. 26 U.S.C. § 7434(a). Section 7434 expressly defines the term "information return" to mean "any statement described in section 6724(d)(1)(A)." *Id.* § 7434(f). Section 6724(d)(1) of the Internal Revenue Code ("IRC") lists 38 statements required under various sections of the IRC that fall within the definition of "information returns." 26 U.S.C. § 6724(d)(1). However, there is no reference in any of these sections to Schedule K-1s. *See id.* Further, neither 26 U.S.C. § 6031, the section requiring the annual filing of a Schedule K-1, nor 26 C.F.R § 1.6031-1, the regulation promulgated under section 6031, are referenced in section 6724(d)(1)(A). 26 U.S.C. § 6724(d)(1)(A). Since Schedule K-1s are not "information returns" under Section 7434, Plaintiff has no legally cognizable claim.

### B. Plaintiff's NCWHA Unlawful Deductions Claim Fails as a Matter of Law.

The NCWHA broadly prohibits employers from deducting from their employees' wages absent certain delineated circumstances. N.C. Gen. Stat. § 95-25.8. In this case,

---

[8] Ironically, had the Duke Defendants represented payments from Defendant PDC on the Form W-2s issued to Plaintiffs, such would constitute a misrepresentation of the amounts that the Duke Defendants paid to Plaintiff, which may in turn support a Section 7434 claim.

Plaintiff attempts to argue that Defendants subjected him to unlawful deductions under the NCWHA because, by partially paying Plaintiff on a Schedule K-1, Plaintiff was "forced . . . to pay Defendants' portion of federal and state taxes." (D.E. 36 ¶ 117). That is, "[b]ecause Defendants issued a portion of Plaintiff's wages using Form K-1, Plaintiff[] w[as] required to pay additional federal and state taxes on those wages, including Defendants' portion of the FICA and other federal and state taxes, deductions that were not allowed by the Commissioner, thereby denying Plaintiffs full consideration for the deduction that was made from the wages that had been earned." (*Id.* ¶ 118). Essentially, Plaintiff attempts to bring an unlawful deduction claim against Defendants resulting from "increased tax liability" paid by Plaintiff. (*Id.* ¶ 119).

Plaintiff's theory, while imaginative, bears no legal support. Despite the abundance of case law regarding misclassification under the NCWHA, the Duke Defendants have been wholly unable to locate any cases indicating that paying a worker in such a manner that the worker is then required to pay taxes on earned amounts somehow violates the NCWHA. This theory – under which an employer would be liable for unlawful deductions for the act of *not* making deductions – would seem to contradict the basic definition of the term "deduction," which involves an employer taking or keeping some portion of a worker's pay. *See generally Osorio v. The Tile Shop, LLC*, 939 F.3d 847, 851 (7th Cir. 2019) (quoting definition of "deduction," in the payroll context, as "an amount of money that is *taken by an employer from an employee's pay*, for income tax, insurance, etc.") (quotations omitted) (emphasis added). Contrary to Plaintiff's efforts to bring an action

13

under the NCWHA, there already exists a regulatory scheme to recover taxes erroneously paid, including filing an administrative claim with the Internal Revenue Service pursuant to 26 U.S.C. § 6511(a) or filing suit against the United States pursuant to 28 U.S.C. § 1346(a)(1). Plaintiff cannot recover from the Duke Defendants amounts that they never deducted from Plaintiffs' pay.[9]

### III. THIS ACTION IS SUBJECT TO DISMISSAL AS TO DUSM AND DUHS FOR INSUFFICIENT PROCESS, INSUFFICIENT SERVICE OF PROCESS, AND LACK OF PERSONAL JURISDICTION.

Under North Carolina law, insofar as it governs service in this action,[10] "service of process statutes [must] be strictly construed and followed, and a plaintiff who fails to comply with them, even where actual notice occurs, does not properly serve the defendant." *Shaver v. Cooleemee Volunteer Fire Dep't*, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008) (citing *Stack v. Union Reg'l Mem'l Med. Ctr., Inc.*, 171 N.C. App. 322, 328, 614 S.E.2d 378, 382 (2005)). "The filing of a lawsuit is a serious event, irrespective of its merits," and "[s]ervice of process is not freestyle, and courts are directed not to overlook procedural deficiencies just because actual notice occurred." *Id.*; *see also Hoyle v. United Auto Workers Local Union 5285*, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006) (requiring

---

[9] The remainder of Plaintiff's unlawful deduction claim for the amount of $10,558.15 is squarely alleged against Defendant PDC, not the Duke Defendants. (D.E. 36 ¶¶ 87, 90, 120).

[10] *See* Fed. R. Civ. P. 4(h)(1)(A) (incorporating standards under Fed. R. Civ. P. 4(e)(1), which requires service pursuant to applicable state law); *see also Davis v. Tyson Foods, Inc.*, 2015 U.S. Dist. LEXIS 101873, at *3 (W.D.N.C. Aug. 4, 2015) ("When service of process is attempted before removal to federal court, the state's service of process rules govern whether the attempt was sufficient.").

14

"strict compliance with the service of process statutes, even where it is clear . . . that a defendant has received actual notice of the action."). Rule 4 of the Federal Rules of Civil Procedure expressly outlines the requirements a litigant must satisfy in order to properly effectuate service. *See* Fed. R. Civ. P. 4(h).

In this case, as provided above, neither DUSM nor DUHS has been served pursuant to Rule 4 of the Federal Rules of Civil Procedure. Plaintiff's counsel is aware of and acknowledged this fact. (D.E. 16-1 at 1; D.E. 18-3 at 4-5). On this basis alone, dismissal of DUSM and DUHS is appropriate pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons started herein, Defendants Duke University, Duke University School of Medicine, and Duke University Health System, Inc. respectfully request that the Court dismiss Plaintiff's claims with prejudice for lack of personal jurisdiction, insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted.

Respectfully submitted this 21st day of January, 2022.

            OGLETREE, DEAKINS, NASH,
            SMOAK & STEWART, P.C.

            /s/ Michael B. Cohen
            Robert A. Sar (N.C. State Bar No. 22306)
            Michael B. Cohen (N.C. State Bar No. 50629)

8529 Six Forks Road, Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: bob.sar@ogletree.com
Email: michael.cohen@ogletree.com

*Attorneys for Defendants Duke University,
Duke University School of Medicine, and Duke
University Health System, Inc.*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Civil Rule 7.3(d), the undersigned attorney certifies that thef word count of the Memorandum of Law in Support of Defendant Duke University, Duke University School of Medicine, and Duke University Health System, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint is 3,915 words. The undersigned has relied on the word count feature of its word processing software in making this Certification, as allowed by the Rule, and has excluded from the count the caption, signature lines, and certificate of service, as directed by the Rule.

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

/s/ Michael B. Cohen
Robert A. Sar (N.C. State Bar No. 22306)
Michael B. Cohen (N.C. State Bar No. 50629)
8529 Six Forks Road, Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: bob.sar@ogletree.com
Email: michael.cohen@ogletree.com

*Attorneys for Defendants Duke University,
Duke University School of Medicine, and Duke
University Health System, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DUKE UNIVERSITY, DUKE UNIVERSITY SCHOOL OF MEDICINE, AND DUKE UNIVERSITY HEALTH SYSTEM, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties of record who participate in the CM/ECF system, including:

Valerie L. Bateman
Law Offices of Valerie L. Bateman
209 Lloyd Street, Ste. 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com

*Attorneys for Plaintiff*

John A. Zaloom
Moore & Van Allen PLLC
100 North Tryon St., Ste. 4700
Charlotte, NC 28202
johnzaloom@mvalaw.com

*Attorneys for Defendant Private Diagnostic Clinic, PLLC*

Respectfully submitted this 21st day of January, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ Michael B. Cohen

18

Robert A. Sar (N.C. State Bar No. 22306)
Michael B. Cohen (N.C. State Bar No. 50629)
8529 Six Forks Road, Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: bob.sar@ogletree.com
Email: michael.cohen@ogletree.com

*Attorneys for Defendants Duke University,
Duke University School of Medicine, and Duke
University Health System, Inc.*

50015207.1